[No. A038052. First Dist., Div. Four. Feb. 29, 1988.]

JOSEPH B. FINNIE et al., Plaintiffs and Appellants, v.
TOWN OF TIBURON, Defendant and Respondent.

4

**COUNSEL**

Eric J. Schmidt for Plaintiffs and Appellants.

Gary T. Ragghianti, Town Attorney, for Defendant and Respondent.

Fran Mayberry, in pro. per., as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

ANDERSON, P. J.—Plaintiffs Joseph B. Finnie and Michael D. Lagios (appellants) appeal from the trial court's order denying a preliminary injunction and imposing sanctions upon them and their attorney for initiating a frivolous action.

On April 8, 1986, the voters of defendant Town of Tiburon (respondent or Town) approved Measure C, which imposed a two-year moratorium on construction within the city limits. In July and August of 1986 numerous lawsuits which challenged the validity and enforceability of Measure C were brought against the Town. In a closed session held on November 12, 1986, the Town and plaintiffs to the Measure C litigation entered into settlement stipulations. The key items of the settlement agreements provided that the Town would call a special election on March 3, 1987, and propose an amendment to Measure C which would allow construction of single-family residences on legal lots of record in existence as of April 26, 1986, the effective date of Measure C. In return, the plaintiffs agreed to stay the litigation pending the outcome of the election and to reimburse the Town $72,800 for legal costs already expended if the new ballot measure passed. On November 14, 1986, the settlement agreements were approved by the Marin County Superior Court and were made public the same day. At a public meeting convened on November 19, 1986, the Town council enacted Resolution Nos. 2420 and 2421 calling a municipal election on March 3, 1987. Simultaneously, a public discussion was held on the March 3 ballot measure during which the Town council described the settlement stipulations and responded to citizen comments relating to the matter. Mr. Schmidt, appellants' trial and appellate counsel, was present at the November 19, 1986, meeting and was made aware of the existence of the settlement stipulations and the Town's intention to place the ballot measure before the voters on March 3, 1987. The ballot measure and the related stipulated agreements were further discussed at the December 11, 1986, special workshop held before the Town council, planning commission and general plan goals committee, and the February 4, 11 and 18, 1987, public hearings. Significantly enough, appellants' counsel was present at all of these meetings and actively participated therein.

The ballot measure (Measure A), which was prepared and printed during November and December 1986 and January 1987, read as follows: "Shall an amendment to the Town's building moratorium ordinance, No. 317 N.S. (Measure C) permitting construction of single family homes on legal lots of record in existence as of April 26, 1986, be adopted?"

The sample ballot also included the Town attorney's impartial analysis of Measure A, arguments for and against Measure A and rebuttals to those

arguments. The opponents of Measure A had full opportunity to, and did in fact, spell out their views concerning the ballot measure. For example, the arguments against Measure A called attention to the alleged closed door meetings between the Town and the developers, urged them to read the stipulated agreements before voting and claimed (1) that the developers paid for the election; (2) that the proposed amendment would primarily benefit the developers rather than the "little guy"; (3) that the agreements would not release the Town from all pending litigation; and (4) that the developers brought the legal action to intimidate the Town.[1] These warnings did not go unheeded: on the March 3, 1987, election Measure A was narrowly defeated by a margin of 12 votes.[2]

Apparently fearing that they would not be able to so convince the voters, appellants, on February 17, 1987, brought an action in the superior court to prevent the March 3, 1987, election altogether. That complaint alleged in conclusory terms that the election should be enjoined on the following grounds:

"1. The election which is set for March 3, 1987, violates basic election requirements imposed by law.

---

[1] The pertinent part of the record reads as follows:
(Excerpts from the argument against the measure.)
"—Some developer lots are released from the revised General Plan for years to come under provisions of 4 different agreements, made behind closed doors, which the voters are asked to approve in this election paid for by developers.
"—*Before you vote* read these agreements (available at Town Hall). The impartial analysis should make clear you are triggering these agreements by voting for the amendment.
"—The "little guy" (non-developer) was left out of the secret negotiations by which it was agreed that at least 50 lots could be built on during the remaining life of Measure C.
". . . . . . . . . . . . . . . .
"—The Agreements do not release the Town from all pending litigation, and, in the case of one major developer, agrees to preserve pending litigation.
"The proposed amendment would primarily benefit developers, not the "little guy". Its passage will not release the Town from all litigation, and will expose the Town to more suits." (Emphasis in original.)
(Excerpts from the rebuttal to argument
in favor of the measure.)
"Fairness is the important issue. In an alleged effort to be fair to individual ("dream home") builders, the Council is responding to developers' needs and not the majority of the citizens it represents. The developers have paid for this election; obviously they expect to gain from a "yes" vote.
"We feel that the developers have brought suit against the Town largely to intimidate the Council, and we regret that they seem to have been successful. Responding to such lawsuits by asking *closed session* agreements with developers is not unlike paying ransom for a hostage, and will only encourage more such lawsuits." (Italics in original.)
[2] We take judicial notice of the March 3, 1987, election results pursuant to Evidence Code section 452, subdivision (a). (See also *Edna Valley Assn.* v. *San Luis Obispo County Etc. Coordinating Council* (1977) 67 Cal.App.3d 444, 449 [136 Cal.Rptr. 665].)

"2. The Town Council acted without jurisdiction when it entered into the contracts with the developers.

"3. The contracts which the election will affirm or reject are all in violation of California Constitution Article I.

"4. The contract with Perini is void because it violates public policy.

"5. Improper tactics of persuasion by Town officials have tainted the election process.

"6. If the election is held and the ballot measure passes, the election will have to be set aside for bribery and coercion.

"7. If the election is held and the developers succeed, the Town will be subjected to a multiplicity of suits.

"8. A "yes" vote on the proposed ordinance would result in enforcement of the Stipulations and thereby destroy the efficacy of the Planning Commission.

"9. The contracts which the electorate is unknowingly required to affirm or reject consist largely of administrative matters which the electorate cannot legally vote upon.

"10. Allowing this election abuse to succeed would undermine principles of fair and open government.

"11. This election is completely based on acts which violated State laws."

These conclusionary allegations remained unsupported by specific factual recitations in the follow-up proceedings as well. Counsel Schmidt's declaration filed on behalf of appellants was couched only in general terms, without reference to solid, tangible facts and alleged as follows:

"3. I have attended numerous meetings of the Tiburon Town Council and devoted a great amount of time to studying records of the Town and the laws relating to them. These observations and studies have convinced me that the Town Council has arranged for a special election to occur on March 3, 1987, which, if held, will violate the law in the many respects referred to in the complaint for an injunction which is on file. On January 27, 1987, I requested the Town Council to refrain from the conduct

described above, but it has refused to do so and expressed its intention to continue its unlawful acts and to proceed with the illegal election."

Similarly, at the February 24, 1987, injunction hearing, appellants presented only legal arguments without offering any evidence to substantiate their numerous charges. In opposition, the Town filed an extensive brief which included the declarations of Therese M. Hennessy, assistant Town clerk, and Gary Ragghianti, Town attorney, objections to the Schmidt declaration, numerous exhibits and legal arguments pertaining to each of the charges. In its opposition papers the Town sought not only the denial of the injunction, but also sanctions against appellants and/or their counsel for bringing a bad faith action. (Code Civ. Proc.,[3] § 128.5.)

Following a hearing the trial court found, inter alia, that appellants failed to make the requisite legal showing to ban the election; that appellants did not present sufficient admissible evidence to substantiate their charges against the Town; that appellants' claim was barred by the doctrine of laches; and that the action brought by appellants was frivolous within the meaning of section 128.5. In accordance therewith, the trial court denied the preliminary injunction and awarded sanctions in the sum of $2,500 against appellants and their counsel.

On appeal appellants contend that the trial court erred both in denying the injunction and in imposing the penalty. Appellants specifically claim that the preliminary injunction should have been issued because: (1) there were illegal attempts to influence the voters by bribery, coercion and intimidation; (2) the stipulation agreements between the Town and the plaintiffs to the Measure C litigation were concealed from the voters and were invalid inasmuch as the city council was not authorized to enter into such agreements without first presenting it to the planning commission, and the agreements were decided in a secret session without proper notice in violation of the Brown Act (Gov. Code, § 54950 et seq.); (3) the evidence presented to the court was sufficient to sustain the charges; (4) the doctrine of laches was inapplicable; and (5) since the matter was meritorious there was no justification for imposing sanctions upon appellants and/or their counsel. Appellants further insist that the issues raised on appeal should be decided despite the claim of mootness because they constitute matters of general public interest and because without deciding the issues underlying the preliminary injunction the reviewing court cannot determine the propriety of the sanction imposed. Respondent counters that the appeal from the denial of the preliminary injunction has been rendered moot by the March 3, 1987, election on Measure A and should be dismissed. In addition, respondent

---

[3] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

maintains that due to the bad faith of the action, the trial court properly awarded sanctions against appellants and their attorney pursuant to section 128.5 and relevant case law (*Staples* v. *Hoefke* (1987) 189 Cal.App.3d 1397, 1418 [235 Cal.Rptr. 165]; *Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 928 [219 Cal.Rptr. 562]; *M. E. Gray Co.* v. *Gray* (1985) 163 Cal.App.3d 1025, 1034) [210 Cal.Rptr. 285]; respondent urges us to impose additional sanctions upon appellants and/or their counsel for pursuing a frivolous appeal (§ 907; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650 [183 Cal.Rptr. 508, 646 P.2d 179]; *Maple Properties* v. *Harris* (1984) 158 Cal.App.3d 997, 1008-1010 [205 Cal.Rptr. 532]). We find respondent's position well taken.

## I. ISSUE OF MOOTNESS

■ First of all, we agree with respondent that the appeal from the denial of the preliminary injunction must be deemed moot and be dismissed.

■ It is well settled that an appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events. As succinctly stated in *Consol. etc. Corp.* v. *United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725], the appellate court cannot render opinions " '. . . upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' " (Accord *City of Los Angeles* v. *County of Los Angeles* (1983) 147 Cal.App.3d 952, 958 [195 Cal.Rptr. 465]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 517, p. 499.) ■ The principles set out above apply also to instances involving preliminary injunctions. For example, in *Bernard* v. *Weaber* (1913) 23 Cal.App 532 [138 P. 941], the plaintiffs unsuccessfully sought a preliminary injunction to restrain defendant city treasurer from issuing street improvement bonds; the bonds were issued and plaintiffs appealed. In dismissing the appeal as moot the appellate court reasoned that reversal of the judgment could not afford the plaintiffs relief because the issuance of an injunction restraining the defendant from "doing that which he has already done, would be an idle and frivolous act, since such decision would have no binding authority and would not affect the legal rights of the parties." (*Id.,* at p. 535.) In *Lenahan* v. *City of Los Angeles* (1939) 14 Cal.2d 128 [92 P.2d 1014], a case even closer in point, plaintiffs brought an action

to enjoin the defendant city from conducting a recall election. The city moved to strike the complaint on the ground that the court had no jurisdiction in the matter. The motion was granted, and plaintiffs applied for a writ of mandamus to compel the superior court to assume jurisdiction over the injunction suit. The appellate court denied the writ on the basis that the election had already been held. In its reasoning the court pointed out that *"when* the event which it was sought to enjoin, that is, *the election, had taken place, the remedies of the plaintiffs were removed from the field of injunctive relief* and were relegated to such remedies, if any, as they might have and avail themselves of subsequent to the election. *Certainly they may not, after the election has been held, still urge a court to stop it."* (*Id.,* at p. 132, italics added.)

This case falls squarely within the parameters of *Weaber* and *Lenahan;* for, following the court ruling on the preliminary injunction, a special election did take place on Measure A on March 3, 1987. It follows that in this postelection period any ruling on that injunction would be purely academic.

■ Appellants' contention that they are entitled to appellate review of the superior court order because "the judge below, by his present order, has completely structured a suit for malicious prosecution against the appellants which merely awaits filing," is entirely meritless. It is well-established law in California that governmental entities may not maintain actions for malicious prosecution against those who have previously unsuccessfully sued such entities because the bringing of suits against the government is absolutely privileged and cannot form the basis for liability for malicious prosecution. (*City of Long Beach* v. *Bozek* (1983) 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072]; *Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1176-1177 [230 Cal.Rptr. 289]; *Curtis* v. *County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1247 [218 Cal.Rptr. 772].)

## II. IMPOSITION OF SANCTIONS

Respondent next argues that the penalty provisions of the order should be sustained because the trial court's finding of the frivolousness of the action is amply supported by both law and facts. In addition, respondent seeks further sanctions against appellants and their counsel for the taking of this frivolous appeal. Respondent's contention is meritorious on both counts.

### A. *Trial Court Sanctions*

■ Section 128.5, under which the trial court imposed sanctions, provides in pertinent part that "Every trial court may order a party, the party's

attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay . . . ." (Subd. (a).) By statutory definition " '[f]rivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).) Similar to the statute, the case law defines the term frivolous also in the alternative. Accordingly, an action is deemed frivolous or in bad faith if it is prosecuted for improper motive (including harassment or delay) *or* if it is totally and completely devoid of any merit. (*Winick Corp.* v. *County Sanitation Dist. No. 2, supra,* 185 Cal.App.3d 1170, 1177; *Lesser* v. *Huntington Harbor Corp., supra,* 173 Cal.App.3d 922, 930, fn. 3.) The standard of determining whether a lawsuit is frivolous is an objective one: a suit indisputably has no merit only "where any reasonable attorney would agree that the action is totally and completely without merit." (*Winick Corp.* v. *County Sanitation Dist. No. 2, supra,* at p. 1177; see also *Staples* v. *Hoefke, supra,* 189 Cal.App.3d 1397, 1418; *M. E. Gray Co.* v. *Gray, supra,* 163 Cal.App.3d 1025, 1034.) When so tested, the trial court's finding of frivolousness must be upheld for three distinct reasons.

### (1) *Lack of Legal Grounds*

■ It is firmly established that unless it is clear that a proposed initiative or ballot proposition is unconstitutional, the courts will not interfere with the right of the people to vote on the measure. As stated in *Brosnahan* v. *Eu* (1982) 31 Cal.3d 1, 4 [181 Cal.Rptr. 100, 641 P.2d 200]: "As we have frequently observed, it is usually more appropriate to review constitutional and other challenges to ballot propositions or initiative measures after an election rather than to disrupt the electoral process by preventing the exercise of the people's franchise, in the absence of some clear showing of invalidity." (Accord *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529, 535 [50 Cal.Rptr. 881, 413 P.2d 825]; *Gayle* v. *Hamm* (1972) 25 Cal.App.3d 250, 256-257 [101 Cal.Rptr. 628].) The rationale of this holding is that the initiative or referendum is "one of the most precious rights of our democratic process" (*Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 563 [11 Cal.Rptr. 340]) which the court must jealously guard against any infringement (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]). To the general rule, there are two exceptions. The first is where the electorate lacks the power to adopt the proposal (for example, where the ballot measure is not legislative in character, or its subject matter is not a municipal affair, or the proposal would amount to a revision rather than amendment of the Constitution). The second exception to the general rule is where the substantive provisions of the proposed measure are legally invalid.

(*Brosnahan* v. *Eu, supra,* at p. 4; *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204, 1209 [217 Cal.Rptr. 790].)

 Herein, the trial court found that appellants failed to bring themselves within the above-stated exceptions.[4] This finding of the trial court is supported by uncontradicted evidence inasmuch as appellants' trial counsel conceded at the preliminary injunction hearing that Measure A was constitutional, was legislative in character and constituted a valid ballot measure which could be voted upon by the Tiburon electorate.[5] The latter was again admitted at oral argument by appellants' counsel when he emphasized that it was the potential *future* misuse by the Town council of a successful passage of the measure rather than its constitutionality that was of concern to appellants.[6] While appellants attacked the ballot measure in the trial court on a number of other extraneous grounds as well (i.e., alleged coercion and intimidation of voters, bribery, misrepresentation, concealment of the stipulated agreements, the unlawfulness of the session at which the stipulations were adopted, the legal invalidity of the agreements, etc.), it is obvious that the charges advanced by appellants (even assuming them to be true) could have culminated only in postelection remedies had Measure A been passed by the voters, but they were entirely insufficient to justify preelection measures designed to deprive the electorate of the right to vote.

### (2) *Finding of Laches*

 The frivolity of appellants' action is further buttressed by the trial court's finding that appellants were guilty of laches in initiating the lawsuit.

---

[4] The finding of the trial court reads as follows: "There is a strong legal and public policy principle that elections should not be enjoined, that legal challenges to election measures submitted to the voters can be resolved after the election without interrupting the election process and the rights of voters. The two basic exceptions to this principle (a) lack of power of the electorate to adopt the ballot measure/initiative; or (b) the illegality of the ballot itself has not been shown by the Plaintiff."

[5] At the injunction hearing, trial counsel for appellants stated as follows: "[G]eneral rule clearly is founded upon the reluctance of courts to prejudge the constitutionality or the validity of proposals on the ballot. And I think it's been explained in the decisions, I've read these decisions before this point was presented to me, the courts have made the point that there is time after the election without taking the risk of denying the electorate the right to vote. And in this case, *we're not challenging the validity of the proposition on the ballot, we're conceding that it is constitutional, it is of a legislative nature, it has a place to be on the ballot.*" (Italics added.)

[6] On appeal Mr. Schmidt argued, inter alia, as follows: "Well, this particular case does not involve any challenge to the constitutionality of the ballot measure. . . . [¶] That's why we said at the trial that we did not challenge the constitutionality or the legality of the ballot measure. . . ." "So the Town Council picked a sure winner to put on the ballot what they could do. It was a legal thing to do. There was nothing dishonest about it. The dishonesty lay in the fact that they were going to use that, and said that they were, and the agreements signed by them said that they were going to use that to pretend to authorize all of these serious, important concessions that nullified the moratorium."

■ It is well settled that laches is established by showing unreasonable delay in bringing the action and prejudice to defendant resulting from this delay (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617]; *Forker* v. *Board of Trustees* (1984) 160 Cal.App.3d 13, 20 [206 Cal.Rptr. 303]). It is likewise recognized that the defense of laches can be asserted in injuction cases (*Tustin Community Hospital, Inc.* v. *Santa Ana Community Hospital Assn.* (1979) 89 Cal.App.3d 889, 894) [153 Cal.Rptr. 76]).

■ Herein, both elements of laches are supported by the evidence. Appellants' counsel first learned about the settlement stipulations and the planned March 3, 1987, election on November 19, 1986, when the Town council held a public hearing at which both matters were discussed. Appellants' counsel also participated in several subsequent public hearings, including the December 11, 1986, workshop; these hearings dealt with the settlement stipulations, the planned March 3, 1987, ballot measure and the election. Nevertheless, appellants did not commence the action seeking an injunction of the election until February 17, 1987—three months after first learning of, and just two weeks before, the scheduled election.

The prejudice resulting from the delay in bringing the action is likewise amply demonstrated. The sworn declaration of Ms. Hennessy, assistant Town clerk, sets forth that by the time appellants' lawsuit was filed, the Town had taken all the necessary steps to hold the special election: the notice of election had been published; the sample ballot, including the analysis and arguments for and against the measure, had been prepared and printed; and the absentee ballots had been mailed and the absentee voting had commenced. Her declaration established further that the Town had incurred expenses of $5,845 in connection with election preparations. Moreover, postponement of the election would have constituted a breach of the stipulated agreements with its attendant monetary consequences.

### (3) *Want of Evidentiary Showing*

■ Still further justifying sanctions is the complete lack of evidence to substantiate appellants' numerous charges of a tainted election. After thorough review of the record, we agree with the trial court that appellants did not introduce any admissible evidence supporting the allegations of the Town's wrongdoing.

■ Section 527, subdivision (a), provides in part that: "An injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor." Thus, while the

injunction may rest upon either a verified complaint or affidavits, the law is settled that the allegations of either must be factual; conclusory averments in either are insufficient to support issuance of an injunction. *E. H. Renzel Co.* v. *Warehousemen's Union* (1940) 16 Cal.2d 369 [106 P.2d 1], establishes that when the complaint is considered as part of the petitioner's evidence it " 'takes the place of an affidavit and must be treated as such; and the facts stated must stand the test to which oral testimony would be subjected. Averments which are but conclusions of law are not competent testimony, though they might stand as matter of pleading. Unless the statement, in the nature of a conclusion, is supported by the facts or circumstances on which it rests, it is insufficient to sustain an application for injunction.' " (*Id.*, at pp. 370-371; accord *Riviello* v. *Journeymen Barbers etc. Union* (1948) 88 Cal.App.2d 499, 501 [199 P.2d 400].)

In seeking an injunction, appellants here relied both on their verified complaint and Counsel Schmidt's declaration. However, all of the allegations of the complaint were couched in general terms and described the charges (including the violation of election laws, improper election tactics, tainted election process, bribery and coercion) in conclusory language and without any reference to evidentiary facts. Likewise, the declaration submitted by appellants' counsel also lacked the requisite facts and limited itself to a general averment that the March 3, 1987, special election if held would "violate the law in the many aspects referred to in the complaint for injunction which is on file." Under these circumstances, the trial court properly ignored the hearsay allegations set out in appellants' points and authorities (*Schaefer* v. *Manufacturers Bank* (1980) 104 Cal.App.3d 70, 76) and correctly found that neither the complaint nor the declaration contained admissible evidence to support issuance of a preliminary injunction.

In view of our conclusion that the imposition of sanctions by the trial court was justified on these three grounds, we do not decide whether the additional findings of the trial court provide further support for the penalty.

### B. *Sanctions on Appeal*

#### (1) *The Appropriateness of Sanctions*

Respondent also requests that we impose a penalty[7] upon appellants and/or their counsel for filing and pursuing a frivolous appeal. (§ 907; Cal.

---

[7]In response to our request preceding oral argument, respondent has suggested a figure equal to all attorney fees expended at trial and on appeal less the trial court's award of $2,500, i.e., $13,930.50.

Rules of Court, rule 26(a); *In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 646-651.) We grant the request.

■ Section 907 provides that "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Rule 26(a) of the California Rules of Court likewise provides in pertinent part that "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon the offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require." In elaborating on the above statutory and regulatory provisions our Supreme Court held that *"an appeal should be held to be frivolous* only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or *when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit."* (*In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 650, italics added; see also *Maple Properties* v. *Harris, supra,* 158 Cal.App.3d 997, 1008.)

■ We have concluded that appellants' action for preliminary injunction was completely without merit and that the trial court was correct in imposing sanctions upon appellants and their counsel. While we recognize that the affirmance of the penalty below does not alone justify further sanctions (*M. E. Gray Co.* v. *Gray, supra,* 163 Cal.App.3d 1025, 1040), we find that the appeal from the trial court's order was equally devoid of any merit. In so concluding we first note that appellants' appeal was clearly moot. Furthermore, a review of the whole cause persuades us that the issues raised on appeal by the appellants and their counsel are entirely meritless and that no reasonable attorney familiar with the applicable law and the facts of this case would have pursued the present appeal.

### (2) *The Manner and Measure of Sanctions*

Having given Counsel Schmidt advance written notice of our intention to consider the imposition of sanctions against him, and having afforded him the opportunity to show cause why sanctions in the amount requested by respondent by affidavit filed with this court in advance of the hearing should not be imposed (*In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 654, we conclude that sanctions should be imposed by reason of counsel's filing an appeal that "indisputably has no merit." (*Id.,* at p. 650.) As a further reason for imposing sanctions, we note with disapproval *counsel's filing* of an "amicus curiae" brief on behalf of Town council member Fran Mayberry; this is nothing more than a supplemental appellants' brief raising a different

issue. This frivolous appeal required respondent to defend by expending considerable time and energy, and has needlessly consumed the time and energy of this court. This is clearly a case in which from its commencement any reasonable lawyer would have said, and this lawyer should have said, "No."

An appropriate measure of sanctions, we feel, should be based in part on respondent's costs and attorney fees. This serves the implicit purpose underlying recent decisions imposing sanctions, i.e., compensating the respondent for the expense of defending against a frivolous appeal. (Eisenberg, *Sanctions on Appeal: A Survey and a Proposal for Computation Guidelines* (1985) 20 U.S.F. L.Rev. 13, 31.)

We find that an appropriate sum for defending against this appeal is $14,000. That figure is in part the product of respondent's demand herein. We note that appellants' counsel has to date never protested in any manner respondent's accounting filed at our request which seeks $13,930.50. He neither addressed respondent's declaration, which was filed and served on him well before oral argument, in writing, nor spoke one word in opposition thereto at argument. Therefore, we award respondent sanctions in the amount requested of $14,000 and assess that amount to appellant's counsel, Eric Schmidt.

Respondent, however, are not the only parties damaged when an appellant pursues a frivolous claim. Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention. (Martineau, *Frivolous Appeals: The Uncertain Federal Response* (1984) Duke L.J. 845, 848 & fn. 18.) In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources. (See generally *Bennett* v. *Unger* (1969) 272 Cal.App.2d 202, 211 [77 Cal.Rptr. 326]; cf. Cann, *Frivolous Lawsuits—The Lawyer's Duty to Say "No"* (1981) 52 U.Colo. L.Rev. 367, 368-369 [discussing the social cost of frivolous appeals].) Accordingly, an appropriate measure of sanctions should also compensate the government for its expense in processing, reviewing and deciding a frivolous appeal. (*Bennett* v. *Unger, supra,* 272 Cal.App.2d at p. 211; Eisenberg, *supra,* 20 U.S.F. L.Rev. at p. 33.)

We find that the cost to the taxpayers to process an average civil appeal currently is approximately $2,324. This figure accounts for the salaries paid to clerks, judicial attorneys, secretaries, and justices for their time expended, but does not include overhead such as rent, materials, etc., that could quite appropriately be included therein. We believe the figure to be a *very*

conservative estimate and order appellants' counsel to pay that amount to the clerk of the court.

The appeal from the denial of the preliminary injunction is dismissed as moot. Imposition of the $2,500 sanction by the trial court is affirmed. Appellants' counsel is to pay respondent an additional penalty of $14,000 and the court $2,324 for pursuing a frivolous appeal.

Poché, J., and Sabraw, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 2, 1988. Mosk, J., was of the opinion that the petition should be granted.