Filed 5/22/13  In re Aaliyah H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re AALIYAH H., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MEGAN M.,<br><br>Defendant and Appellant. | C070493<br><br>(Super. Ct. No. JD231844) |

Megan M., mother of the now 21-month-old minor, appeals from the judgment (disposition orders) declaring the minor a dependent child, denying her services, and placing the minor out of the home.  (Welf. & Inst. Code, §§ 300, 358, 360.)[1]  Appellant argues the juvenile court erred in finding jurisdiction because the Sacramento County Department of Health and Human Services (Department) failed to show the minor was

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

1

currently at risk of suffering physical harm or abuse. Appellant also argues the disposition finding that removal was required and the order bypassing her services for her were not supported by substantial evidence. In a review hearing subsequent to the judgment, the juvenile court returned the minor to parental custody and ordered family maintenance services for both parents. Several months thereafter, the court terminated the dependency awarding joint custody to both parents.[2] We affirm the juvenile court's exercise of jurisdiction and conclude the dispositional issues are now moot.

FACTS

A protective custody warrant issued in September 2011 to detain the minor soon after birth based on facts which arose during the ongoing dependency proceedings of her half sibling, I.M. The Department filed a petition alleging that the minor was at risk of physical harm because I.M., who was two years old at the time he was injured, was the subject of a sustained petition in May 2010 which alleged I.M. was physically abused by the minor's father (father) and sustained multiple injuries, including extreme bruising consistent with inflicted trauma while in the care of appellant and father.[3] The minor's petition further alleged that appellant failed to take reasonable measures to protect the minor because, despite services in I.M.'s case, she maintained a relationship with father and allowed him access to I.M., hid these facts from the Department, minimized I.M.'s abuse, and denied father abused I.M.

---

[2] We previously granted appellant's request for judicial notice of the orders of August 9, 2012, returning the minor to parental custody under a family maintenance plan and granting the Department's oral motion to modify the prior order bypassing services for appellant by offering services to her. Having been advised that the juvenile court terminated the dependency and returned custody of the minor to both parents on January 24, 2013, on our own motion we take judicial notice of that order as well.

[3] The original petition also alleged that burns were inflicted on I.M. However, that allegation was subsequently stricken as unsupported.

Following a contested detention hearing, the court found a prima facie case that the minor came within the provisions of section 300 and ordered the minor removed pending a jurisdiction hearing.

The jurisdiction report stated that, in April 2010, appellant told the social worker I.M. was taken into protective custody because father hit him. Appellant said she "flipped out" when she saw the bruises while changing I.M.'s diaper. Appellant initially claimed I.M. fell off a bike at school, but admitted the school said he was not on a bike that day and said that it did not "look like a bike could do that." Appellant distinguished the large purple bruise on I.M.'s buttocks from impetigo and flea bites and normal abrasions he had also sustained. Dr. Stewart and Dr. Rosas both concluded the bruising was due to inflicted trauma. Appellant explained her own bruises as workplace injuries and said there was no domestic violence in the home. She stated father would sometimes spank I.M. She found it hard to believe father had injured I.M. and said her relationship with him was over, that she chose her son over father.

According to police reports at the time I.M. was injured, his daycare provider stated he was not bruised when he went home on March 18, 2010, but did have bruises when he returned on March 22, 2010. The officer observed extensive bruising on both sides of I.M.'s buttocks. In a recorded interview, I.M. first said he fell off his bike and that appellant told him to say that. He then said father injured him. Dr. Rosas, who examined him, concluded the bruises were consistent with impacts and were likely inflicted, perhaps by forceful spanking.

Information from the social worker's notes at the time of investigation of I.M.'s injuries are consistent with the information in the police reports including reports of purple bruises I.M. said were inflicted by father but that the adults said were caused by a fall from a bike. Photographs of I.M.'s injuries were sent to Dr. Stewart, who reported they showed extensive bruising which could not be explained by a single incident, but was typical of physical abuse. The maternal cousin, with whom I.M. was placed,

3

reported I.M. often woke up screaming, once pleading with father "don't do that," and responded with fear to nonthreatening situations.

In the jurisdiction report, the social worker reviewed the history of I.M.'s dependency, stating that mother was offered reunification services in 2010. However, the Department was currently recommending termination of services in that case based on appellant's failure to protect the minor by continuing a relationship with father and failing to benefit from approximately 18 months of services. In I.M.'s case, appellant admitted to concealing her pregnancy, denied I.M. had any contact with father during visits, and minimized the physical abuse inflicted on I.M. However, I.M.'s therapist said I.M. spoke about father in the present tense and had become more guarded following his disclosure that appellant was pregnant. Appellant had participated in, and completed, various services including counseling, physical abuse group counseling, and domestic violence counseling and had demonstrated an understanding of the concepts. Appellant also had participated in parenting and codependency meetings. In July 2011, the social worker in I.M.'s case found that I.M. was reporting that he had contact with father during overnight visits with appellant. Appellant continued to deny any relationship with father but, after the minor's birth, visits with I.M. were supervised. Subsequently I.M. saying "now it is okay to tell" reported his ongoing contact with father when he visited appellant and said that father would watch him when appellant went to work.

The jurisdiction report also stated that, after the minor was removed, appellant still insisted she was not in a relationship with father but said she saw him occasionally and engaged in sexual intercourse one time, producing the minor. Mother again explained how she found out about I.M.'s bruises and inferred that she or her roommate's boyfriend could have caused the injuries when spanking I.M., although acknowledging that father also spanked him during that time.

Father was interviewed about the bruising and said he did not see it until he and appellant's roommate took I.M. to the doctor for flea bites. He stated that the emergency

4

response worker did not talk to him about the allegations of I.M.'s petition when they came to the home. When asked about I.M.'s statements that father hit him, father said he did "tap" I.M. but would "never hit him out of anger" and claimed I.M. had an imagination, that he would never abuse him. Father denied being present during appellant's unsupervised visits with I.M. during I.M.'s dependency case. After the minor's removal, father began attending parenting classes.

A social worker interviewed I.M. in October 2011. I.M. was able to describe the colors of father's house and again said that father spanked him, it really hurt and he was "all different colors" on his bottom. The social worker verified that father's apartment complex was the same colors I.M. identified.

In the social worker's assessment, the evidence supported jurisdiction under section 300, subdivisions (a) and (j) because I.M. repeatedly made statements implicating father as the perpetrator of his abuse and appellant and father made conflicting statements regarding the timeline of the infliction and discovery of the abuse as well as the kind of bike they claimed I.M. fell from. Further, appellant and father provided new information in the current investigation which was not disclosed in the original investigation of I.M.'s injuries, subtly implying that a third party caused the injuries or that appellant was the perpetrator. The social worker believed these current statements were an effort to detract from the conclusion of the original investigation. The allegation of extensive bruising caused by inflicted trauma was supported by two doctors' evaluations. The reports in I.M.'s case contained evidence of multiple contacts between I.M. and father during I.M.'s visits with appellant, indicating her failure to take reasonable measures to protect him. Further, I.M.'s statements that he was left in father's care when appellant went to work, I.M.'s ability to describe father's apartment complex, and the minor's conception indicate appellant and father had an ongoing relationship, despite their claims to the contrary. Additionally, appellant's statements to the social worker in October 2011 show she now minimizes I.M.'s abuse and does not believe father was capable of inflicting it.

5

As to disposition, the social worker recommended out-of-home care for the minor. The social worker relied on the evidence of extensive bruising inflicted on then two-year-old I.M. and the possibility he was kept from attending school the day after appellant discovered the bruises. Father had not participated in anger management services and had not demonstrated his ability to safely care for the minor and manage his own frustration and anger. While appellant had participated in comprehensive services in I.M.'s case, she had not benefitted in that she did not understand the need to protect I.M. from father and minimized the risk father presented to him. Appellant prioritized her relationship with father over I.M. and had not shown that she would behave differently with the minor. Noting that the current recommendation in I.M.'s case was termination of services, the social worker recommended that, if termination of services occurred, then appellant should be denied services pursuant to section 361.5, subdivision (b)(10) in this case. The social worker recommended services for father.

An addendum report in December 2011 provided a transcript of I.M.'s interview regarding his injuries in 2010, copies of photographs of his injuries, and a copy of a medical examination of I.M. in March 2010.

The contested jurisdiction hearing commenced December 1, 2011. The court heard testimony over five days. Social workers testified in accordance with the prior reports regarding I.M.'s condition and parental statements made in various interviews. One social worker testified there was an additional referral in I.M.'s case after an unsupervised visit that father hit I.M. Further, the social worker testified that appellant's involving I.M. in concealing her relationship with father by telling I.M. not to talk about it caused I.M. anxiety. The officer investigating I.M.'s case identified his report and stated he forwarded the case to the district attorney with a recommendation to prosecute for child abuse based on Dr. Rosas's evaluation of I.M.'s injuries. Appellant testified about the sequence of events which led to I.M.'s removal. She stated that father was never at her unsupervised visits with I.M. and she never left I.M. in his care. Appellant

6

further testified she had benefitted from services and never coached I.M. Father testified he was not interviewed by officers or social workers when I.M. was removed and did not recall spanking I.M. around the time of his injury. He stated he had started services including parenting, anger management, and drug testing.

At the conclusion of the hearing, the court sustained the allegations set forth in section 300, subdivisions (b) and (j). The court found the evidence that father would spank I.M. for misbehaving was undisputed. I.M. was bruised and several people, including appellant, saw the bruises. The bruises were separate from injuries suffered when I.M. had a bike accident at home. The credibility of the parents was compromised and counsel's arguments that I.M. never saw father and that no one told appellant not to see him were disingenuous. Appellant's cover-up of her ongoing relationship with father created both difficulty for the social worker in assessing the risk to I.M. and anxiety for I.M. The court found appellant knew of father's abuse of I.M. and testimony that I.M. was never present when appellant and father were together was not credible. The court also found that the risk to the minor was that the behavior which resulted in injury to I.M. had not been addressed with services and was still being denied. The court set a contested disposition hearing.

A second addendum provided a copy of the minute orders terminating appellant's services in I.M.'s case.

Following the contested disposition hearing, the court adopted the recommended findings and orders, placing the minor in out-of-home care, denying services to appellant pursuant to section 361.5, subdivision (b)(10) and offering services to father.

DISCUSSION

I

Appellant contends the court erred in finding the minor came within section 300, subdivisions (b) and (j) because the Department failed to show the minor was currently at risk of physical harm or abuse.

Respondent asserts that appellant's challenge to the jurisdictional findings is subject to dismissal because she failed to specify that the notice of appeal included jurisdictional issues. We disagree. Jurisdiction findings can only be reviewed on appeal from the judgment. (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112.) The notice of appeal, while not specifying the date of the jurisdiction hearing, clearly states that the appeal is from the "Jurisdiction and Disposition Findings." We construe the notice of appeal liberally in favor of its sufficiency and will address the jurisdictional issue. (*Ibid.*; Cal. Rules of Court, rule 8.405(a)(3).)

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence--that is, evidence which is reasonable, credible, and of solid value--to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.)

The evidence adduced at the jurisdiction hearing through reports and social workers' testimony is more than adequate to sustain the petition. The evidence showed that father hit I.M. in March 2010, which action resulted in serious bruising on I.M.'s buttocks. The doctors who saw I.M. or photographs of the injury were of the opinion the bruises were inflicted and consistent with child abuse. The investigating officer referred the case for prosecution. Appellant was aware of the existence of the bruises yet did nothing to protect I.M. at the time and he was removed from parental custody as a result of a referral from his school. While appellant initially appeared invested in I.M.'s safety and best interests, over time, and despite approximately 18 months of services, appellant minimized the abuse and refused to believe father was the perpetrator. Appellant's

attitude led to her permitting contact between I.M. and his abuser. The contact resulted in additional physical abuse. Appellant was aware the Department had cautioned her against contact with father and she responded by concealing the ongoing relationship and her pregnancy, enlisting I.M.'s aid in the cover-up and creating anxiety for him. By the time of the minor's birth, it was clear that appellant was more invested in a relationship with father than in protecting I.M. Additionally, father had done nothing to resolve the anger issues which led to the injuries he inflicted on I.M. At the hearing, appellant's position had not changed and father, while beginning services, had not yet demonstrated that he would be able to care for the minor without placing her at risk.

Substantial evidence supports the juvenile court's finding that the minor was at risk of physical harm based on the injury to her half sibling and the failure of the parents to remove the risks which led to that injury.

## II

Appellant argues that "[b]ecause the jurisdictional findings and orders fail, so must the dispositional findings and orders based thereon." We have found the jurisdictional findings were supported by substantial evidence. The disposition orders are not in jeopardy for that reason.

Appellant also contends substantial evidence does not support removal because voluntary supervision would have been adequate to protect the minor. Appellant further contends the court erred in bypassing services pursuant to section 361.5, subdivision (b)(10) because the evidence did show that following termination of services for the half sibling, she had made a reasonable effort to treat the problems which led to removal of the half sibling.

Respondent argues that both issues are moot because the juvenile court's orders of August 9, 2012, returning the minor to parental custody and granting a modification of its prior order to allow appellant to be offered services, provided appellant the relief she seeks in this appeal.

9

"It is well settled that an appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10.) If subsequent events make it impossible for this court to grant appellant any effective relief, dismissal is appropriate. (*Ibid*.; *In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1316-1317.) Further, where an appeal is taken from a judgment of disposition and an order of the juvenile court terminating either jurisdiction or parental rights becomes final while the appeal is pending, the pending matter is moot. (*In re Jessica K.*, *supra*, 79 Cal.App.4th at pp. 1316-1317; *In re Michelle M.* (1992) 8 Cal.App.4th 326, 330; *In re Raymond G.* (1991) 230 Cal.App.3d 964, 967.)

Appellant argues that the removal issue is not moot because it will affect the time period for services should the minor be removed again. We disagree. Since the dependency has been terminated no second removal in this case can occur. Any removal which might occur now that custody has been returned to the parents will depend upon new facts and carry its own time frame. The challenge to the removal order is moot.

Appellant argues the bypass issue is not moot because she will remain a parent described by section 361.5, subdivision (b)(10) if reversal of the bypass does not occur. We fail to discern how this condition, which was obviated by the court's finding that providing services was in the minor's best interest and later by its ruling returning the minor to parental custody, currently affects the question of mootness.

DISPOSITION

The judgment is affirmed.

                         BLEASE                , Acting P. J.

We concur:

      NICHOLSON         , J.

      BUTZ               , J.