Filed 11/26/13  In re E.A. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re E.A., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> B.D., <br><br> Defendant and Appellant. | G048319 <br><br> (Super. Ct. No. DP022277) <br><br> O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.

\*          \*          \*

B.D. (mother) appeals from the juvenile court's March 25, 2013 order denying her Welfare and Institutions Code section 388 petition (all further undesignated statutory references are to this code), which sought to vacate the court's May 2012 jurisdictional and dispositional findings. For the reasons expressed below, we affirm.

I

FACTS AND PROCEDURAL BACKGROUND

In a prior opinion (*In re E.A.* (Feb. 5, 2013, G046996 [nonpub. opn.]), we upheld the juvenile court's jurisdictional and dispositional findings concerning E.A., born in March 1995. (See §§ 300, subds. (b) [failure to protect] & (g) [caretaker absence], 361, subd. (c) [removal from home]). The facts of the case through May 2012 are recounted in the prior opinion and incorporated here by reference. Suffice it to say, we held substantial evidence supported the juvenile court's judgment, including mother's admissions she could not control E.A., did not want E.A. to return home because of her behavior and accusations of abuse, that "it [was] best to let go since E[.A.] does not want to come back," and mother's statements on the eve of trial reiterating she did not want E.A. returned to her care.

In March 2013, the Orange County Social Services Agency (SSA) recommended terminating dependency jurisdiction because E.A. had turned 18 years old and did not wish to remain a dependent of the court. On the day of the termination hearing, mother filed a section 388 petition seeking an order vacating the jurisdictional findings, claiming SSA possessed information that undermined E.A.'s credibility. At the hearing, mother also made a motion to dismiss the case and to vacate the dispositional findings. (§ 385.) On March 25, 2013, the juvenile court denied mother's section 388

2

petition and her oral section 385 motion. The court adopted SSA's recommendation and terminated dependency proceedings.

## II

## DISCUSSION

A. *The Appeal is Not Moot*

SSA contends the appeal is moot. It argues E.A. is no longer a dependent of the juvenile court and this court therefore cannot grant mother any effective relief. (See *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [when an event occurs which renders it impossible for appellate court to grant appellant effective relief the court will not proceed to a formal judgment but will dismiss the appeal]; *People v. Gregerson* (2011) 202 Cal.App.4th 306, 321.) Mother counters "the [] order dismissing the dependency is not synonymous with a court order vacating jurisdictional findings" and she is prejudiced by "erroneously sustained jurisdictional findings . . . for several reasons," including potential liability for the costs of supporting E.A. during her placement (§ 903, subd. (a)), the inability to have her name removed from the Child Abuse Central Index (see Pen. Code, § 11169), and the possibility the allegedly false findings could prejudice her if she is involved in future juvenile court proceedings concerning her three younger children. Mother has articulated several reasons why erroneously sustained jurisdictional findings could negatively affect her. If reversal of the juvenile court's order denying mother's section 388 petition could result in an order vacating the jurisdictional findings the appeal would not be moot.

B.  *The Juvenile Court Did Not Abuse Its Discretion in Denying Mother's Section 388*

*Petition Without a Hearing*

Mother contends she presented new evidence in her section 388 petition amounting to a prima facie showing that information supplied by E.A. in "support [of] the jurisdictional allegations was wholly unreliable."  Section 388, subdivision (a), provides in relevant part "[a]ny parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  Section 388, subdivision (d) provides, "If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."  (See Cal. Rules of Court, rule 5.570 [petition must be liberally construed in favor of its sufficiency].)

A change of order presupposes a change of circumstances.  Thus, "[a] juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child."  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)  A parent "need only make a prima facie showing of these elements to trigger the right to a hearing."  (*Ibid.*)  The "prima facie requirement is not met unless the facts alleged . . . would sustain a favorable decision on the petition."  (*Ibid.*; see *In re Alexis W.* (1999) 71 Cal.App.4th 28, 36 [party seeking modification bears the burden to show the proposed change in circumstances would be in the child's best interests].)  On appeal from denial of a modification petition, the reviewing court will not disturb the juvenile court's

decision unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

In sustaining the amended section 300 petition, the juvenile court found E.A. had suffered or there was a substantial risk she would suffer serious physical harm or illness from mother's failure or inability to supervise or protect her. Specifically, the court sustained allegations that on at least two occasions between summer 2011 and March 2012 mother slapped E.A. in the face and pulled her hair, mother yelled and cursed and called the child a "bitch" when angry, and she disciplined E.A. with a belt in 2007 and 2009. The court also sustained allegations that mother lacked insight into appropriate parenting techniques and her anger problems, mother refused to seek additional services after her prior attempts to control E.A.'s volatile behavior through faith-based counseling and other programs had been unsuccessful, and the child was at substantial risk of physical and emotional harm. Finally, the court found E.A. refused to return to mother's care because of physical and emotional abuse, and mother declared she was unwilling to care for E.A.

Mother contends no witnesses or physical evidence corroborated E.A.'s claims of physical or verbal abuse. She noted that following the disposition hearing in May 2012, E.A.'s "negative behavior continued to spiral out of control. [She] repeatedly ran away[], exhibited severe and rapid mood swings, and abused illegal drugs and alcohol. [] [She] caused drama in her placements and engaged in destructive, counterproductive [] relationships, which included temper tantrums, defiance, oppositional behavior, and irrational thoughts. [] [She] was also aggressive and

5

assaultive towards [mother] and her younger siblings [], and [E.A.] engaged in domestic violence with her boyfriend."

Mother contends evidence arising after May 2012 undermined E.A.'s testimonial credibility and the court's sustained findings. Mother cites an August 31, 2012 incident where a cottage supervisor at Orangewood Children's Home confronted E.A. about an e-mail E.A. had sent. The supervisor told E.A. to "stop acting out the characters in her books and making her mom look like the bad guy. [E.A.] froze and appeared shocked. She asked [the worker] who told her she did that. The child did not deny doing this and laughed and agreed she needed to stop making her mom look bad and stated she needed help. Child was counseled in the matter and she then returned to her reading book."

Mother also relies on a September 2012 observation by one of E.A.'s therapists, who stated E.A. "'overdramatizes and catastophises [*sic*] to fit whatever agenda she may have in her head.'" The therapist also stated "the child 'is always anxious and stressing out about something' . . . [and] 'this is part of the drama and insatiable need for attention . . . .'" In November 2012, E.A.'s Orangewood cottage supervisor reported E.A. was "displaying disrespectful behaviors and is using threats toward the mother. For example, she stated, 'I will call the cops and lie again.'" Mother also cites the social worker's statement in a December 12, 2012 addendum report that "due to the fact that [E.A.] will be 18 on March 22, 2012, and that there is not [*sic*] basis of abuse to legitimize removing the child from her mother's custody the undersigned is recommending a case plan of Family Maintenance."

In February 2013, the social worker included a police report describing a January 6, 2013 domestic dispute between E.A. and her mother. The child reported

"mother slapped her two times on the face and pulled her hair two times," but the officer noted the child had no visible injuries or redness on her face. Mother reported E.A. yelled obscenities, broke glasses in the kitchen, and grabbed mother's face and scratched her. Because mother had visible injuries on her face, the police took E.A. to juvenile hall. E.A. admitted she "wants revenge on her mother and [] intends to do malicious acts against her mother." After E.A. missed a wraparound meeting and lied about where she had been, mother complained on March 19, 2013 that "it was the [social worker's] fault that [E.A.] is the way she is. That the 'agency supports her lies', and . . . why would [E.A.] change or do what is right when 'everyone' supports her lies and bad behavior'. The mother blamed [SSA] for not protecting her and her children and said that [SSA] is in error and does not want to admit it because the agency does not want to look bad. . . . [Mother] said they [her lawyer and the court] won't listen to me [,] 'you [the social worker] have not told the Court about [E.A.'s] lies and how she has hit my son and disrespected me, and how she said that she lied about being abused, you only write tidbits of what happens."

We have considered the allegedly new evidence in light of the record and find no basis to conclude the juvenile court abused its discretion in rejecting mother's petition. The evidence did not rise to the level of a witness recanting testimony. (*In re Brandon C.* (1993) 19 Cal.App.4th 1168, 1171.)[1] Nor does mother demonstrate an order modifying the prior order to vacate the jurisdictional and dispositional findings would serve E.A.'s best interests. She argues E.A. would "change if everyone [stopped

_____

[1]     Mother's section 388 petition also included older e-mails and documents she claimed should have been introduced at the jurisdictional hearing. This is not new evidence, and mother does not demonstrate she exercised reasonable diligence to present this information. In any event, this information does not persuade us the court erred in denying the section 388 petition.

supporting] her lies and bad behavior" and would "realize the consequences of her actions and the importance of honesty . . . ." But the mother-daughter relationship was dysfunctional before SSA's intervention in March 2012. The juvenile court heard testimony over several days at the jurisdictional and dispositional hearing and sustained the allegations. Nothing in mother's rehearing petition undermined the court's earlier ruling that returning to mother's care posed a risk of substantial harm to E.A.. E.A. is no longer a dependent of the court and there is no indication an order vacating the jurisdictional findings would have any effect on her. The juvenile court did not err or abuse its discretion by denying mother's petition and motion to vacate the prior findings without an evidentiary hearing. The same analysis applies to mother's arguments under section 385 [("[a]ny order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article")].

III

DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.


ARONSON, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

8