[Civ. No. 11845. Third Dist. Apr. 22, 1969.]

EVELYN BENNETT, as Administratrix, etc., Plaintiff and Respondent, v. CHARLES F. UNGER et al., Defendants and Respondents; LUPPEN & HAWLEY, INC., Defendant, Cross-complainant and Respondent; OWENS-CORNING FIBERGLAS CORP., Cross-defendant and Appellant; AETNA CASUALTY & SURETY COMPANY, Cross-defendant, Intervener and Appellant.

Hanna & Brophy and Leo T. Cronin for Cross-defendant and Appellant and for Cross-defendant, Intervener and Appellant.

Panattoni, Farrell & Gilbert, Adon V. Panattoni and Andrew Smolich for Plaintiff and Respondent.

204

Fitzwilliam, Memering, Stumbos & DeMers, Paul H. Cyril, Bronson, Bronson & McKinnon and Douglas B. McDonald for Defendants and Respondents and for Defendant, Cross-complainant and Respondent.

PIERCE, P. J.—The personal representative of an estate recovered a judgment in an action for the decedent's wrongful death caused by work-induced injuries suffered on a school construction job. Parties to the action were the defendant third party tortfeasors, who were the general contractor and a sub-contractor on the job, and the decedent's employer and its workmen's compensation insurance carrier, who had been brought into the action as cross-defendants by one of the defendants. The action was court-tried. Findings and judgment were in favor of plaintiff and against defendants for damages suffered by the heirs less workmen's compensation benefits paid or payable. The findings and judgment also declared that the employer and its compensation insurance carrier were barred from reimbursement of such workmen's compensation benefits paid because of the concurrent negligence of the employer. ▮ Judgment follows the rule of *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641].[1] Defendant third party tortfeasors did not appeal. Appellants, the employer and the carrier, contend that although the employer was found by the court to be concurrently negligent, the carrier is entitled to circumvent the *Witt* v. *Jackson* rule (see fn. 1) and must be given a first lien on the plaintiff's judgment for the carrier's compensation benefits paid. The contention is without merit.

### FACTS

▮ Arthur E. Bennett died from injuries received while

[1]That case states that an employer (or his carrier) may recover from a third party tortfeasor compensation benefits paid provided he, the employer, has not been negligent. Reimbursement may be effected in three ways: (1) by an action by the employer against the third party (Lab. Code, § 3852); (2) by the employer joining as a party plaintiff or intervening in an action brought by the employee (Lab. Code, § 3853); and, (3) by allowing the employee to prosecute the action alone, with the employer subsequently applying for a lien against the amount of the employee's judgment less an allowance for litigation expenses and attorney's fees (Lab. Code, § 3856, subd. (b)). The court points out that the Legislature had not expressly stated what was to happen in the event the employer was concurrently negligent. It laid down the rule that in that event the employer—and hence his carrier—could not recover insurance benefits paid but since "the injured employee may not be allowed double recovery, his damages must be reduced by the amount of workmen's compensation he received."

in the course and scope of his employment. He worked for Owens-Corning Fiberglas Corporation (Owens). Aetna Casualty & Surety Company (Aetna) was Owens' workmen's compensation insurance carrier. It paid the compensation benefits due under the workmen's compensation and insurance laws. (Lab. Code, div. 4, § 3201 et seq.). Plaintiff, Bennett's wife Evelyn, as personal representative of Bennett's estate, brought a wrongful death action. The action was against the partners comprising the firm Charles F. Unger Construction Company (Unger), also the partnership itself, and Luppen & Hawley, Inc., sued as the alleged tortfeasors responsible for Bennett's death-inducing injuries. These defendants were the general contractor and a subcontractor respectively of a school construction job on which Bennett was working. Owens, his employer, was not an original party to the action. Plaintiff in her complaint had expressly attempted to exclude from her claim for damages the compensation benefits paid or payable. Defendants Unger and Luppen & Hawley answered, denying negligence. Luppen & Hawley, however, also filed a cross-complaint in the nature of an action for declaratory relief, naming Owens and Aetna as cross-defendants. Both cross-defendants appeared in the action, answered the cross-complaint, denying Owens' negligence and Aetna also filed a complaint in intervention against Unger and Luppen & Hawley, praying for a return of the benefits paid and any sums thereafter paid for compensation benefits.

The action was pretried, Doe defendants were dismissed and a pretrial order was made. In it the issues as we have outlined them are set forth. It was stated that the cross-complaint of Luppen & Hawley was "in the nature of declaratory relief under the theory of *Witt* v. *Jackson*." (See fn. 1.)

Discovery was completed and the case came on for trial. The day before the trial there were out-of-court settlement negotiations involving all parties. On the morning of the trial selection of a jury commenced. On the afternoon of the first trial day, the record shows (by an affidavit filed after trial by the trial attorney for Aetna and Owens; that negotiations between the third party tortfeasors and the carrier had reached the stage where the two were just $1,500 apart. (Defendants had already reached agreement with plaintiff as to the figure plaintiff was willing to accept and defendants were willing to pay.) The $1,500 difference between Aetna and defendants could not be reconciled. The parties, therefore, returned to court. The following events took place in chambers:

The jury was waived by all parties. Defendants made a contingent offer. They offered (1) to pay plaintiff $110,000 and (2) to pay Aetna in addition the amount of its outlay for compensation benefits stipulated to be in the sum of $11,749.95. *Both offers, (1) and (2), were expressly made contingent, however, upon the trial progressing on the issue of Owens' concurrent negligence.* Counsel stated: "But, we do not agree to pay Plaintiff anything until the question of the validity of the lien has been adjudicated."[2] Plaintiff was willing to accept the offer and, through her attorney, so expressed herself. Counsel for Owens and Aetna did not accept it. Plaintiff's counsel was placatory.[3]

Despite assurances both by the court and counsel to the contrary, Mr. Brown continued to assert that a settlement had already taken place. He again stated that *Smith* v. *Trapp, supra,* 249 Cal.App.2d 929, was applicable. Trial was postponed for two days. Before adjournment, however, the court informed counsel that, notwithstanding waiver of a jury, it

---

[2]The reason the offer of settlement was so framed becomes clear in the colloquy occurring when the offer was made. Counsel for all parties and the court discussed *Smith* v. *Trapp* (Fourth Dist. 1967) 249 Cal.App.2d 929 [58 Cal.Rptr. 229], *where there had been an actual settlement* between the deceased employee's representative prior to trial. The settlement had only covered plaintiffs' damages. The employer had filed a complaint in intervention. The employer (and its carrier) had objected to the settlement but the trial court had approved it anyway. The appellate court reversed. It relied upon Labor Code sections 3859 and 3860, subdivisions (a) and (b). The former section contains a provision: "No release or settlement of any claim . . . as to either the employee or the employer is valid without the written consent of both." Section 3860, subdivisions (a) and (b), relate to notices and were designed to protect the employer against undisclosed settlements whereby his right to reimbursement might be jeopardized. We will advert to the *Smith* case further below.

[3]He said: "I have told Mr. Brown [trial attorney for Owens and Aetna]—he says that he does not want me in the lawsuit, and I told him that I'd either stay in the lawsuit or get out, as he desires. I'm repeating also that I told him that I would make available to him all of my witnesses.

"I further told him that I would make available everything that . . . would prove the liability in this case. I told him that I would either call the witnesses, stay in the lawsuit and call the witnesses for him, or he could call them himself." He had also agreed to turn over exhibits in the case. Mr. Brown confirmed that the foregoing quoted statement was correct.

Plaintiff's counsel also said:

". . . I want to make sure that every conceivable right the compensation carrier has is being properly protected at this point; and if there are any avenues or corners that have not been properly covered which in any way jeopardize the interests of the compensation carrier, I think this would be the proper time for the compensation carrier to tell us what they are so that we can give them whatever protection that they need."

would release the parties from that waiver and summon a jury if that was their wish. Brown reiterated his contention: "I claim a lien against that settlement in the amount of compensation payments that have been paid out to date, $11,749.95." The court advised him to be ready to go ahead on the cross-complaint either before a jury or before the court. Counsel did not avail himself of the offer to recall a jury.

Trial was resumed two days later. There was a stipulation as to the amount of the lien (recovery contingent upon its being found to be collectible). Mr. Brown then reiterated his contention that there had been a settlement and that the constitutional rights of his clients had been prejudiced. He then dismissed the complaint in intervention. His last utterance in the courtroom was: "With that, your Honor, I have no more—nothing further to say in this case, and I'm going to excuse myself." Apparently he started to or did walk out. Plaintiff's counsel stated: "I think he should be called back, your Honor. Can we hold him here?" To this the court replied: "I don't know any way you can hold him. The only way I could hold him would be to arrest him."

After Mr. Brown's dramatic departure a short recess was taken. The court was then informed that the firm, Hanna & Brophy, by whom Mr. Brown was employed had been reached by telephone. A member of that firm, Mr. Jensen, had instructed plaintiff's counsel that he was not to represent it in any way. He had stated: ". . . that the proceeding would have to continue as though it was regularly set for trial and that defense counsel did not show up." An affidavit subsequently submitted by plaintiff's counsel, set forth in the Clerk's Transcript, states: "Mr. Brophy explained that the case would go and be handled as any case that is called for trial where one side fails to appear."

The case then proceeded to trial. Plaintiff's counsel made an opening statement. It detailed the plaintiff's case. Counsel for defendant Unger and defendant Lupper & Hawley each separately then stated that, although no settlement was made, they each conceded negligence and withdrew the defense of contributory negligence. Both then affirmed they were willing to adhere to the offered settlement terms and they were prepared to proceed with the cross-complaint against Owens and Aetna. The trial proceeded: exhibits were introduced, five witnesses testified, a deposition was read and cross-complainant rested.

Thereafter the court filed a memorandum opinion. It

pointed out in detail the facts upon which the court had concluded that Owens was concurrently negligent. Findings of fact and conclusions of law were duly prepared. Judgment in favor of plaintiff for $110,000 was entered. Owens was denied a lien.

## LACK OF SUBSTANCE ON APPEAL

It will be noted that at no time did counsel for Aetna attempt to block a settlement between plaintiff and the admittedly negligent defendants. Instead, he having failed in his own negotiations—by $1,500—to reach a settlement with defendants as to the value of Aetna's claim to a lien, thought he had found a way to circumvent *Witt* v. *Jackson, supra,* by asserting that a nonexistent settlement had already been unconditionally executed which entitled Aetna to a 100 percent recovery ipso facto and without any risk.

The contention is carried over into the seven-page brief filed on appeal in which but one case, *Smith* v. *Trapp, supra,* 249 Cal.App.2d 929, is cited as authority. *Smith* is not in point. It hinged upon the fact that plaintiff employee and defendant tortfeasor had already completed settlement. Therefore, for *Smith* to be of any value as precedent here, appellants had to seek and claim a similar settlement. They purported to find it in a minute order of the clerk: ". . . whereupon respective counsel for the plaintiff and the defendants informed the Court that the matter had been settled as between said parties . . . ." The minutes were inaccurate. Here there was nothing more than a *contingent* offer of settlement. Appellants' brief does not mention this.

Also glossed over is the fact that dismissal of the complaint in intervention did not terminate the litigation or remove the issue of Owens' concurrent negligence. That had been foreclosed by the joinder of that issue by the cross-complaint for declaratory relief and the filing of an answer thereto by Owens and Aetna. (There had been no cross-complaint in *Smith.*) ■ A cross-defendant may not resign from a law suit. His counsel, however, cannot be restrained from walking out during the trial. When he does so the wheels of justice do not come to a creaking halt to await counsel's pleasure. His client simply suffers the misfortune of being unrepresented during the rest of the trial of the issues affecting that party. Code of Civil Procedure section 594 provides in material part: "In superior courts and municipal courts either party may bring an issue to trial or to a hearing, and, in the absence of the adverse party . . . may proceed with his case, and take a

. . . judgment, as the case may require; provided, however, if the issue to be tried is an issue of fact, proof must first be made to the satisfaction of the court that the adverse party has had five days notice of such trial.'' Instances of walkouts by attorneys are fortunately rare. A recent case similar to this one, however, has been cited: *People* ex rel. *Department of Public Works* v. *Busick* (1968) 259 Cal.App.2d 744, 751 [66 Cal.Rptr. 532] (hg.den.). There the results were the same as they will be here. In *Busick* at least an abuse of discretion was claimed. None is urged here. Neither is it contended that the judgment is not supported by sufficient evidence, nor do appellants argue that the judge was in any respect unfair in adjudicating that Owens had been guilty of concurrent negligence.

There does seem to be a contention here that after counsel for Owens and Aetna had walked out it was improper for plaintiff and defendants to compromise the value of the former's claim for negligence, less the compensation benefits, leaving only that liability to be litigated. Why? Defendants had already agreed that the benefit payments would be added to a judgment in favor of Aetna if defendants were unable to prove Owens' concurrent negligence. Appellants have no refuge whatever within the facts of *Smith* v. *Trapp, supra*, 249 Cal.App.2d 929.

Nevertheless, we do have trouble with the rule of *Smith* even within the context of its own facts. We expressed that concern in *LaBorde* v. *McKesson & Robbins, Inc.* (1968) 264 Cal.App.2d 363 [70 Cal.Rptr. 726] (hg. den.).[4] Labor Code section 3859 and section 3860, subdivisions (a) and (b), appear to require a joint written consent by both employer and employee before any settlement can be made with the

---

[4]The facts in *LaBorde* are:

In midtrial counsel for the plaintiff employee and tortfeasor informed the court they had reached a settlement as to plaintiff's general damages without regard to the expenditures made by the employer's compensation carrier which had filed a complaint in intervention. Tortfeasor's counsel further stated he would stipulate as to the carrier's outlay leaving as the only issue the concurrent negligence of the employer which, if present, would bar his lien under the *Witt* v. *Jackson* rule (fn. 1). The carrier there dismissed its complaint in intervention. (There was no cross-complaint to tie him into the case further. Thus, the trial on the issue of the employer's negligence was stymied.) It asked for an order imposing a lien on plaintiff's recovery which was denied. We affirmed the trial court's orders.

The opinion in *LaBorde* was filed July 25, 1968. That was after this case was tried and after the original briefs were written on appeal. *LaBorde*, however, asserted no rule having any novel consequences as applied to the facts of this case.

third party tortfeasor. Those sections were enacted before *Witt* v. *Jackson. Smith,* nevertheless, says the sections must be literally interpreted and would apply them as though the Legislature had anticipated *Witt* v. *Jackson.* In *LaBorde* we said (on p. 368 of 264 Cal.App.2d): "Sections 3859 and 3860 were not designed to cover the *Witt* v. *Jackson* situation. They were not intended to block a settlement between an injured employee and a third party tortfeasor where the concurrent negligence of the employer has been made an issue in the litigation and where the settlement is carefully drawn to leave intact all of the rights of the employer (and his compensation carrier)."

In *LaBorde,* we distinguished, as well as disagreed with parts of the *Smith* decision.[5] We also pointed out (at p. 370): "The law favors the settlement of controversies. [Citation.] We have stated what the purpose of the law was and what it was not. 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law . . . . Such purpose will not be sacrificed to a literal construction of any part of the act.' (*Select Base Materials, Inc.* v. *Board of Equalizati*on (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Words will not be given their literal meaning when to do so would make the provisions of a statute apply to transactions never contemplated by the legislative body . . . ." We disagreed with *Smith,* inter alia, in that part of the decision which states (249 Cal.App.2d at p. 940): "[T]he [employer] in protecting his monetary interests will certainly negotiate in good faith for the purpose of settling the claim or suit." If the facts in *La Borde* have not demonstrated the fallacy of that assumption, the facts here have. Owens and Aetna negotiated up to a point. But they wanted $7,249.95 as the value of their $11,749.95 claim and the defendants would not pay them more than $5,750. Rather than compromise the difference of $1,499.95 Owens and Aetna thought they had found a better way to get it all. They imposed a form of

---

[5]*LaBorde* was not a wrongful death action. *Smith* was. The case now before us is also a wrongful death action. Dictum in *LaBorde* points to some distinctions between a wrongful death action and an ordinary action for personal injuries. There are, of course, such differences as respects the nature of the award. Our considered opinion is now they are not such differences as to justify giving the employer/carrier such arbitrary control as that sought by the application of the rule of *Smith* to the facts of this case or to any case where issues joined by a cross-complaint have tied the employer/carrier into the case. As to other situations we express no opinion.

economic pressure on plaintiff and upon defendants, calculated to induce them, either separately or together, to absorb this $1,500 rather than jeopardize $110,000. Plaintiff and defendant, however, refused to respond to that sort of pressure. The next step was what we can only characterize as an attempt to trifle with the processes of the law by an inexcusable walkout during the course of a trial. This might be more readily understandable had it been perpetrated by an inexperienced practitioner. The fact is that it was expressly ratified by a senior member of a long-established firm, who, according to the record, underscored a challenge to the court to proceed ''as though counsel did not show up.'' The truth and accuracy of that report in open court of Mr. Brophy's statement has not been denied.

This appeal is without merit. Courts are clogged with litigation. The time necessarily expended in studying this record, in listening to frivolous oral argument, and in writing this opinion on appeal has been considerable. A frightful and frightening backlog of appeals, few of which, one hopes, will match this one in frivolity has become further swollen by the time required to review the absurd contentions made here. This deserves more than censure. It necessitates sanctions.

Judgment is affirmed. The firm of Hanna & Brophy is fined $500 to be paid to this court for a frivolous appeal.

Regan, J., and Bray, J., * concurred.

A petition for a rehearing was denied May 12, 1969, and the opinion was modified to read as printed above.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.