[Nos. A040624, A041382, A041383. First Dist., Div. Two. Jan. 10, 1990.]

BANK OF CALIFORNIA, as Administrator, etc., Plaintiff, v. WALTER A. VARAKIN et al., Defendants and Appellants; STEVEN F. LACHMAN, as Receiver, etc., et al., Respondents.

COUNSEL

Walter A. Varakin for Defendants and Appellants.

Armour, St. John, Wilcox, Goodin & Schlotz, Robert A. Goodin, Diane Wear Larrabee and Claire D. DeChazal for Respondents.

OPINION

KLINE, P. J.—These three consolidated cases represent the fourth, fifth and sixth appeals filed by Walter A. Varakin and Augusta Varakin (hereafter jointly Varakin unless otherwise specified),[1] arising out of this superior court case. No. A040624 (*Varakin IV*) is an appeal from an award of sanctions of $718.75 for the filing of a frivolous motion. No. A041382 (*Varakin V*) is an appeal from an order denying a claim of exemption and awarding sanctions of $1,015 for the filing of another frivolous motion. No. A041383 (*Varakin VI*) is an appeal from an award of sanctions of $667 for the filing of additional frivolous motions. We dismiss the appeals as to two orders, affirm the remaining orders at issue, grant respondents' requests for sanctions for the taking of frivolous appeals and notify the State Bar of the judicial sanctions imposed upon Walter Varakin.

*Background*

In 1975, Amalia Tarnavsky filed this action for partition, an accounting and the appointment of a receiver against Varakin with respect to property located on Portola Drive in San Francisco. Steven F. Lachman was appointed receiver, and in April 1978 the court entered a judgment pursuant to a settlement agreement between Tarnavsky and Varakin directing the receiver to sell the property and distribute the net proceeds one-half to Tarnavsky and one-half to Varakin. Varakin thereafter disavowed the settlement and moved to set aside the judgment. The motion was denied and the judgment was affirmed on appeal in August 1980 in an unpublished opinion of this court (*Varakin I*). While the appeal from that judgment was pending, the receiver sold the property for $902,000 but, apparently due to pending legal proceedings, was unable to convey the property to the purchaser until September 1981. After protracted proceedings, including the appointment of a referee by the superior court, the court ordered the receivership termi-

---

[1] This opinion is largely about the actions and tactics of Walter Varakin, as attorney for himself and his mother, Augusta Varakin. For simplicity, masculine pronouns are used to refer to "Varakin" even when the reference is technically to these parties jointly.

nated and the receiver discharged. Varakin appealed from that order. In an unpublished opinion that issued on July 10, 1986, we affirmed the order and remanded for a determination of reasonable attorney's fees on appeal to be awarded to the receiver. (*The Bank of California* v. *Varakin,* No. A022885 (*Varakin II* ).)[2]

Meanwhile, disputes between Walter Varakin and his former wife, Anne Kirueshkin, resulted in the filing of Kirueshkin v. Varakin (San Francisco Super. Ct. No. 743074). On July 27, 1981, the court in that action granted Kirueshkin's motion for an order enjoining Walter Varakin from collecting his pro rata share of certain proceeds of the sale of the Portola Drive property involved in this partition action and directing the receiver to place $75,000 of those proceeds in an interest bearing account pending further order of the court. The order also provided that Walter Varakin could receive the funds by posting a bond in that amount with the receiver. Thereafter, the receiver instructed the escrow agent for the sale of the property, Title Insurance Company of California (TICOR) (formerly Title Insurance and Trust Company at the time of some of these proceedings) to hold $75,000 in an interest bearing account. Anne Kirueshkin subsequently obtained a judgment in *Kirueshkin* v. *Varakin* entitling her to these proceeds with an offset of $11,995 plus interest. That judgment was affirmed on appeal with a modification on November 25, 1986. TICOR subsequently filed an action interpleading the $75,000 plus interest. The court in that action discharged TICOR from further liability or responsibility and ordered Varakin and Kirueshkin to litigate their claims to the funds. Varakin appealed that order. This court, in an unpublished opinion filed simultaneously herewith, affirmed that order and awarded TICOR sanctions against Varakin for the taking of a frivolous appeal. (*Ticor Title Insurance Company* v. *Varakin,* No. A041903.)

Following the remand in *Varakin II* in 1986, the trial court awarded $15,000 attorney's fees to the receiver for defending the appeal, in accordance with this court's directive. Varakin appealed from that order and from an order denying a motion to have the court's previous order terminating the receivership (which had already been affirmed on appeal in *Varakin II* ) declared null and void. This court affirmed and awarded attorney's fees of $9,419 as sanctions for the taking of a frivolous appeal in an unpublished opinion filed November 1, 1988. (*Wells Fargo Bank* v. *Varakin,* No. A037399 (*Varakin III* ).)

---

[2] Both Wells Fargo Bank and The Bank of California were previously involved in this litigation as the conservator and administrator, respectively, of the estate of Amalia Tarnavsky. They are not parties to the present appeals.

## Varakin IV

On August 14, 1987, Varakin filed an order to show cause why the receiver, Lachman, should not be held in contempt for giving instructions to the escrow holder to withhold $75,000 of the proceeds of the sale of the Portola Drive property instead of distributing it. On the same date, Varakin filed a motion to declare null and void the order awarding attorney's fees to the receiver for defending the appeal in *Varakin II*, an order which was already on appeal to this court in *Varakin III*. At the hearing on these matters, Varakin withdrew the order to show cause and the motion. The court nevertheless considered the request of the receiver and his counsel for sanctions, determined that both the order to show cause and motion were completely without merit and brought in bad faith and awarded sanctions in the amount of $718.75 in favor of the receiver and his counsel, Armour, St. John, Wilcox, Goodin & Schlotz (hereafter Armour) by an order filed September 25, 1987. Varakin filed a notice of appeal from this order on November 23, 1987.

## Varakin V

In November 1987, Armour executed upon one of Walter Varakin's bank accounts to satisfy the judgment for attorney's fees awarded following our remand in *Varakin II*. Varakin filed a "claim of exemption," which was simply a reiteration of contentions previously advanced on repeated occasions that the receiver had not properly distributed the receivership assets. On December 4, 1987, the trial court entered its order denying the claim of exemption, finding the claim was entirely without merit, in that it was not a proper claim of exemption and was made in bad faith, and awarded Armour sanctions in the amount of $1,015, to be paid personally by Varakin. On January 11, 1988, Walter Varakin filed a motion for an order declaring the December 4, 1987 award of sanctions null and void for lack of jurisdiction. The trial court's order denying that motion was not filed until February 10, 1988. On February 1, 1988, Varakin filed a notice of appeal from the December 4, 1987 order and the subsequent order denying the motion to have that order declared null and void. Pursuant to rule 2(c) of the California Rules of Court,[3] we exercise our discretion to decline to treat the notice of appeal as filed after entry of the February 10 order and dismiss the appeal as to that order.

## Varakin VI

The third appeal now before us is from an order filed December 4, 1987, denying a renewed motion to have the award of attorney's fees made after

---

[3] All further citations to rules are to the California Rules of Court.

remand in *Varakin II* declared null and void and awarding to receiver and his counsel, Armour, sanctions in the amount of $667.[4] The notice of appeal, filed February 5, 1988, stated that an appeal was also being taken from a subsequent order denying a motion to vacate the award of sanctions as null and void. That order was not filed until February 19, 1988. Pursuant to rule 2(c), we exercise our discretion to decline to treat the notice of appeal as filed after entry of the February 19 order and dismiss the appeal as to that order.

### Discussion

We first briefly address the merits of the portion of the consolidated appeals we have not dismissed before proceeding to consider the three sanction awards.[5]

■ In *Varakin V,* the December 4, 1987, order denying the "claim of exemption" was made on the basis that the claim was not a proper claim of exemption. A brief look at the rambling four-page declaration of Walter Varakin purporting to support the claim underscores the correctness of the trial court's order. The declaration says nothing about why the bank account should not be subject to execution. Rather, the purported claim is simply another recapitulation of Walter Varakin's seemingly endless dissatisfactions with the earlier proceedings in this action.

■ In *Varakin VI,* the appeal challenges an order denying a *renewed* motion to have the attorney's fees award made following remand in *Varakin II* declared null and void. At that time, the fee award was on appeal in *Varakin III* and the trial court obviously had no jurisdiction to declare the award null and void.

### The Sanction Awards

Code of Civil Procedure section 128.5, subdivision (a), provides in pertinent part: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."[6] Subdivision (b)(2)(A) of that

---

[4] This is a completely different December 4, 1987, order from the December 4, 1987, order appealed in *Varakin V.* The order in *Varakin V* was made by Commissioner Denis Shalloo, while the order in *Varakin VI* was made by Judge Claude Perasso.

[5] Since Varakin withdrew his order to show cause and motion in *Varakin IV,* only the award of sanctions is on appeal.

[6] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

section defines frivolous as "totally and completely without merit."
■ The standard of review on appeal is abuse of discretion: "The test on appeal is whether the trial court has abused the broad discretion to justify our interference with a sanction award. (*Atchison, Topeka & Sante Fe Ry. Co.* v. *Stockton Port Dist.* (1983) 140 Cal.App.3d 111, 117 . . . ; *Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 668 . . . .)" (*Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1176 [230 Cal.Rptr. 289].)

■ In *Varakin IV,* sanctions were awarded in the modest amount of $718.75 after Varakin brought an order to show cause why the receiver should not be held in contempt and made an unconscionably belated motion to have an attorney's fees award declared null and void. As already explained, the fee award was on appeal in *Varakin III* at the time of the motion. Our review of the record persuades us that the order to show cause was also completely without merit. We need not discuss the order in detail, however, because the bringing of the motion alone more than justified an award of $718.75. Similarly, the modest awards of $1,015 and $667 made in *Varakin V* and *Varakin VI,* respectively, are fully justified by the frivolous assertion of a claim of exemption and renewed motion regarding the attorney's fees award. No abuse of discretion has been shown.

### Requests for Sanctions on Appeal

Respondents[7] in all three consolidated cases requested that we impose sanctions for the prosecution of frivolous appeals.

Section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Rule 26(a) provides in pertinent part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

■ "An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. Thus, an appeal should be

---

[7]The receiver, Lachman, and Armour are the respondents in *Varakin IV* and *Varakin VI;* Armour alone is the respondent in *Varakin V.*

held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or where it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) In order to comply with the due process concerns described in *Flaherty,* we advised the parties prior to oral argument to be prepared to discuss the propriety of an award of sanctions in these matters.

We have concluded that these appeals are manifestly frivolous under either of the tests set forth in *Flaherty.* First, the orders appealed from are not only obviously correct, but appellant's legal contentions are absurd. Secondly, the entire history of this prolonged litigation demonstrates that Varakin has consistently abused every legal process available to him to delay fulfillment of his obligations. These appeals, like those before them in this case, have been utterly futile gestures that have unnecessarily wasted the time and resources of respondents and this court. An award of sanctions is appropriate.

Pursuant to rule 26(a), this court may impose upon offending attorneys or parties such penalties "as the circumstances of the case and *the discouragement of like conduct in the future* may require." (Italics added.) It is all too apparent that the attorney's fees and sanctions awarded against Varakin in the past have not deterred the vexatious litigation he has visited upon the courts for many years. The victims of appellant's misconduct include not only his former wife, whom he has mercilessly harassed for nearly a decade, but also the taxpayers who have underwritten the cost of the extensive trial and appellate proceedings appellant has vainly commenced.

As has been pointed out, "[r]espondent[s] . . . are not the only parties damaged when an appellant pursues a frivolous claim. Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention. (Martineau, *Frivolous Appeals: The Uncertain Federal Response* (1984) Duke L.J. 845, 848 & fn. 18.) In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources. (See generally *Bennett* v. *Unger* (1969) 272 Cal.App.2d 202, 211 [77 Cal.Rptr. 326]; cf. Cann, *Frivolous Lawsuits—The Lawyers's Duty to Say 'No'* (1981) 52 U.Colo. L.Rev. 367, 368-369 [discussing the social cost of frivolous appeals].) Accordingly, an appropriate measure of sanctions should also compensate the government for its expense in processing, reviewing and deciding a frivolous appeal. (*Bennett* v. *Unger, supra,* 272 Cal.App.2d at p. 211; Eisenberg, [*Sanctions on Appeal: A Survey and a Proposal for Computation Guidelines* (1985)] 20 U.S.F. L.Rev. [13], at p.

33.)" (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581].) In *Finnie,* Division Four of this court awarded the respondent $14,000 incurred attorney's fees as sanctions against the appellant's counsel and additionally ordered counsel to pay sanctions of $2,324 to the clerk of the court, a sum the court described as "a *very* conservative estimate" of the cost to the taxpayers to process an average civil appeal. (*Id.,* at pp. 17-18.)

In *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96 [260 Cal.Rptr. 369], the Court of Appeal observed: "In this case, involving five separate appeals, we are presented with an incredibly obscene example of the defiance, subversion and abuse of the judicial system in general . . . . As two of the five appeals were frivolous and were clearly motivated by an intent to delay and harass the respondent and, in the process, imposed a significant burden on this court, we impose substantial sanctions." (*Id.,* at pp. 102-103.) The *Young* court awarded attorney's fees of $118,909 incurred by the respondent, $113,909 to be paid by the appellant and $5,000 to be paid by his attorney. (*Id.,* at p. 135.) The court also ordered the appellant to pay the sum of $20,000 to the clerk of the court as additional sanctions. (*Id.,* at p. 137.)

Similarly, in *M.E. Gray Co.* v. *Gray* (1985) 163 Cal.App.3d 1025, 1040 [210 Cal.Rptr. 285], the Court of Appeal imposed sanctions where the "decision to pursue an appeal not only exacerbated an already appalling situation, but also, it exhibited a flagrant disregard for the [attorneys'] obligation ' "to respect the legitimate interests of fellow members of the bar, the judiciary and the administration of justice." ' [Citations.]" The court continued: "This abuse of the appellate process, in our opinion, satisfies *Flaherty*'s fiat as to the paramenters within which punishment may be imposed." (*Ibid.*) In *Gray,* the court imposed three times the actual expenses incurred by the prevailing party, stating: "Fundamental to our decision is the specific purpose to be served in discouraging like conduct in the future. [Citation.]" (*Id.,* at p. 1041.) In *Hummel* v. *First National Bank* (1987) 191 Cal.App.3d 489 [236 Cal.Rptr. 449], the court assessed a penalty of $50,000 against the appellant and his attorney after considering the expense and inconvenience to both the respondent and the court. (*Id.,* at pp. 495-496.)

■ Sanctions for "the discouragement of like conduct in the future" are equally justified here. Respondents, who seek sanctions in an amount not less than the attorney's fees incurred on appeal, have submitted declarations stating that the following fees were incurred: Prior to oral argument, $4,352.50 in *Varakin IV,* $3,474.50 in *Varakin V* and $2,672.50 in *Varakin VI* ; preparing for and attending argument, $1,567.50; totalling $12,067. We

deem these fees reasonable and will award one-half of that amount each to Lachman and Armour. $6,033.50 is payable by Augusta Varakin, as a party, and Walter Varakin, as a party and an attorney, to Lachman; $6,033.50 is payable by Augusta Varakin, as a party, and Walter Varakin, as a party and an attorney, to Armour.

Finally, we do not deem the above sanctions adequate to compensate Varakin's other victims, the taxpayers, or to deter like conduct in the future. We will therefore impose additional sanctions in favor of the court.

Following oral argument, we permitted the parties to file submissions regarding Varakin's financial condition. An employee of Armour filed a declaration stating that he had reviewed records of a realty information service which showed that Augusta Varakin owns four properties in San Francisco; Walter and Augusta Varakin own property in Sonoma County; Augusta Varakin recently sold property in San Francisco for $1 million; and Walter Varakin recently sold property in San Francisco for $626,000. In response, Walter Varakin filed a declaration pointing out some errors in the information supplied by Armour, particularly that Augusta Varakin has only a one-half interest in one of the properties listed; the sale alleged to be for $1 million was actually for $500,000 and was a tax free exchange of property (§ 1031 of the Int.Rev. Code); and property was sold by Walter Varakin as an executor, not an owner. Varakin's declaration further stated that the property in Sonoma County consists of a cottage and two unbuildable lots; Walter Varakin annually receives pension benefits of $8,000, Social Security benefits of $5,300 and additional income of approximately $20,000; Walter Varakin's legal practice primarily involves family matters; Augusta Varakin is an 87-year-old widow, who annually receives $3,600 in Social Security benefits and approximately $19,000 in other income; Walter Varakin assists Augusta Varakin in preparing tax returns and operating five buildings, three of which are converted Victorians, presently less than half occupied and undergoing necessary repairs, producing substantial negative cash flow. For purposes of this opinion, we accept all corrections made by Walter Varakin to Armour's submission. ■ Nevertheless, the declarations demonstrate that Walter and Augusta Varakin are the owners of substantial real property and have a combined annual income of nearly $56,000. In order to reimburse the taxpayers victimized by this unremittingly frivolous litigation and to deter such conduct in the future, we impose additional sanctions in the amount of $25,000. This amount is payable jointly by Augusta Varakin, as a party, and Walter Varakin, as a party and an attorney, to the clerk of this court. In the event this additional sanction does not deter the conduct it is designed to discourage, imposition of a greater amount may then be considered.

In compliance with the requirements of Business and Professions Code section 6089, subdivision (b),[8] a copy of this opinion shall be forwarded to the State Bar. (See *Young* v. *Rosenthal, supra*, 212 Cal.App.3d 96, 138.)

All of the orders appealed from which we have addressed on the merits are affirmed. The appeals are dismissed as to the other orders.

Benson, J., and Peterson, J., concurred.

A petition for a rehearing was denied January 30, 1990, and appellants' petition for review by the Supreme Court was denied April 4, 1990. Lucas, C. J., and Panelli, J., did not participate therein.

---

[8] This section provides that a court shall notify the State Bar of "[t]he imposition of any judicial sanctions against [an] attorney, except sanctions for failure to make discovery or monetary sanctions of less than one thousand dollars ($1,000)."