[No. H004984. Sixth Dist. Oct. 18, 1991.]

COMPUTER PREPARED ACCOUNTS, INC., Plaintiff and Appellant, v. DAVID H. KATZ et al., Defendants and Respondents.

COUNSEL

Mesirow, Fink, Rosenblatt & Dawson, James L. Dawson, Steven M. Fink, Kinder & Wuerfel, Mark D. Wuerfel and Mark Koop for Plaintiff and Appellant.

Jerome Marks for Defendants and Respondents.

OPINION

ELIA, J.—Plaintiff Computer Prepared Accounts, Inc. (CPA) appeals from an order denying its application for a preliminary injunction and awarding attorney's fees and sanctions against it. We affirm, and also award $10,000 in sanctions to Jerome Marks, a professional corporation, for which CPA and James L. Dawson are jointly and severally liable. We award $10,000 to the court, for which Dawson and CPA are jointly and severally liable. Finally, we award $500 in sanctions to Jerome Marks, a professional corporation, for which Mark D. Wuerfel is liable.

### FACTS AND PROCEDURAL BACKGROUND

CPA is a corporation which sells computer equipment and creates specialized computer software programs for its customers. Between February 1985 and December 1987 CPA employed defendant William Stockman as a computer programmer. In the course of his duties Stockman worked on the computer system developed for defendant Katz & Glassberg, a law firm specializing in the collection of commercial claims. According to Katz & Glassberg, the system did not function properly and was not completed or maintained as promised despite repeated requests to correct the inadequacies. In December 1987 Stockman left CPA. Shortly thereafter Katz & Glassberg employed Stockman to remove the defects from, complete, and maintain the system.

In April 1988 CPA filed a complaint against Stockman, David H. Katz, Harold Glassberg, and Katz & Glassberg alleging, inter alia, misappropriation of a trade secret in the form of a "source code module." CPA also sought an ex parte temporary restraining order and preliminary injunction against each defendant to prevent Stockman from working for or communicating with Katz & Glassberg and to return the source code module to CPA. CPA contended that the source code module was a trade secret as defined by Civil Code section 3426.1, subdivision (d), and that preliminary injunctive relief was appropriate under Civil Code section 3426.2 and Code of Civil

Procedure section 526. The trial court denied the applications for temporary restraining orders and set the matter for hearing on the applications for preliminary injunctions.

In support of its application for injunctive relief against Katz & Glassberg, CPA proffered two documents, entitled "Comprehensive Maintenance Agreement" and "Software License Agreement." Both documents bore the signature of defendant David Katz. The license agreement provided that the source code module belonged to CPA; the maintenance agreement contained a covenant by Katz & Glassberg that it would not hire any employee of CPA for one year after such employee left CPA.

In its opposition Katz & Glassberg contended that these documents were forgeries. According to the declaration of David Katz, Katz & Glassberg had obligated itself to *jointly* design and market the system with CPA; he had never signed or authorized the signing of the "Software License Agreement." Katz further explained that during their early negotiations CPA had offered Katz & Glassberg a "Comprehensive Maintenance Agreement" similar to the one submitted to the court by CPA, but that Katz & Glassberg had refused to consider any long-term maintenance agreement until the system had been completed by CPA.

Katz & Glassberg also submitted a declaration by a forensic scientist, who expressed the opinion "beyond a reasonable doubt" that the signatures on the two documents were placed there by either tracing or a photomechanical process. Accordingly, defendants requested attorney's fees as sanctions based on CPA's bad faith in submitting the false documents to the court.

The trial court denied the applications for preliminary injunctions. It also granted the request for sanctions pursuant to Civil Code section 3426.4[1] and Code of Civil Procedure section 128.5.[2] The court thereupon awarded $12,000 in attorney's fees and costs to defendants David Katz, Harold Glassberg, and Katz & Glassberg, and $2,500 in attorney's fees and costs to defendant William Stockman. The trial court's findings included the following:

---

[1]Civil Code section 3426.4 provides: "If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party."

[2]Code of Civil Procedure section 128.5 provides, in pertinent part, "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

"9. *Plaintiff's claims that defendants misappropriated trade secrets were made in bad faith in that plaintiff's claims were based upon documents that were not authentic, that plaintiff knew that the documents were not authentic, and plaintiff failed to verify the authenticity of the documents after being advised by defendants that the documents were not authentic, and for the further reason that plaintiff failed to establish that there were any trade secrets that were misappropriated by defendants.* (Italics added.)

"10. The filing by plaintiff of applications for temporary restraining orders and preliminary injunctions were made in bad faith in that the applications were based upon documents that were not authentic, that plaintiff knew that the documents were not authentic, and plaintiff failed to verify the authenticity of the documents after being advised by defendants that the documents were not authentic. *The use of such tactics by plaintiff was frivolous in that the applications by plaintiff were totally and completely without merit and were prosecuted for the sole purpose of harassing defendants.*" (Italics added.)

CPA moved for reconsideration of the trial court's ruling. The motion was denied. CPA then filed this appeal. James L. Dawson, of the law firm Mesirow, Fink, Rosenblatt & Dawson, authored CPA's opening brief.

In the brief, Dawson raised three arguments. First, he argued that Civil Code section 3426.4 did not authorize the award of attorney's fees because the matter has not been finally resolved either by way of a judgment on the merits, a dispositive motion, or a voluntary or involuntary dismissal.

Second, Dawson contended that the trial court abused its discretion in that it awarded sanctions "solely" to " 'control its processes,' and without consideration of the criteria set forth in § 128.5."

Finally, Dawson argued that a finding of bad faith is insufficient to support an award of sanctions under section 128.5 unless the application for preliminary injunction was also frivolous—that is, totally without merit.

Respondents disputed CPA's contentions and also asked that $10,000 in sanctions be imposed for the filing of a frivolous appeal. (Code Civ. Proc., § 907.)

On March 14, 1991, CPA filed a notice of substitution of attorneys. The notice stated that attorney Mark D. Wuerfel, of the law firm Kinder & Wuerfel, would be replacing attorney Dawson as counsel for CPA.

On May 22, 1991, Wuerfel informed this court that he was willing to waive argument. Because oral argument was scheduled for the next day, May 23, 1991, argument continued on calendar as scheduled.

On May 23, 1991, Wuerfel appeared to argue on behalf of CPA. In a remarkably candid statement, Wuerfel stated that he agreed with the trial court's decision to deny the preliminary injunction, and also agreed with its decision to impose sanctions against CPA. In short, Wuerfel conceded that the judgment should be affirmed. Wuerfel not only conceded that the judgment should be affirmed, he also indicated that if he had been the trial judge, he too would have imposed sanctions against CPA, and that he might have imposed them in an even larger amount. Finally, Wuerfel agreed that the appeal was frivolous, and acknowledged the court's authority to impose sanctions against him, CPA, and CPA's previous counsel.

On July 12, 1991, we issued our opinion affirming the judgment. We also awarded $10,000 in sanctions to opposing counsel, for which CPA and attorney Dawson were jointly and severally liable, $10,000 to the court, for which attorney Dawson and CPA were jointly and severally liable, and $500 to opposing counsel, for which attorney Wuerfel was liable.

Dawson filed a petition for rehearing. He argued that he did not have notice that sanctions would be imposed, and also argued that Wuerfel could not concede the appeal on Dawson's behalf. Because due process required that Dawson have an opportunity to argue the matter, we granted the petition for rehearing, and issued an order to show cause regarding sanctions against Dawson.

On August 21, 1991, Dawson, represented by counsel, appeared before this court to argue the issue of sanctions. Jerome Marks appeared for respondents. Dawson argued that his appeal was not frivolous. Marks, on the other hand, continued to argue that the appeal satisfied the requirements of Code of Civil Procedure section 907. He also argued that additional sanctions should be imposed.

## DISCUSSION

The sole issue concerns whether the appeal is frivolous under Code of Civil Procedure section 907. This is because CPA has conceded, albeit belatedly, that the trial court's judgment should be affirmed. Although Dawson still appears to argue that the trial court erred in denying the application for preliminary injunction and awarding sanctions and attorney's fees, Dawson no longer represents CPA. Thus, the issue regarding the propriety of the trial court's award of sanctions is settled. CPA has agreed the trial court's judgment should be affirmed. However, we must now determine whether sanctions should be awarded against CPA and its attorneys for filing a frivolous appeal. As we shall explain below, we conclude sanctions are warranted.

Code of Civil Procedure section 907 authorizes a court to award sanctions when an appeal is frivolous or taken for purposes of delay.[3] It provides, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

■ Courts have struggled to apply Code of Civil Procedure section 907. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 646 [183 Cal.Rptr. 508, 646 P.2d 179].) On the one hand, the statute should be used to compensate for a party's egregious behavior, and to deter abuse of the court system and the appellate process. (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581]; *Bank of California* v. *Varakin* (1990) 216 Cal.App.3d 1630, 1638-1639 [265 Cal.Rptr. 666].) On the other hand, sanctions should not be awarded simply because an appeal is without merit. Indiscriminate application of section 907 could deter attorneys from vigorously representing their clients, and deter parties from pursuing legitimate appeals. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 647-649.)

*In re Marriage of Flaherty, supra,* 31 Cal.3d 637 attempted to strike a balance between preventing inexcusable conduct and preserving an attorney's ability to vigorously represent his or her client. The court set forth a test for determining whether an appeal is frivolous. Two standards, subjective and objective, were described. Under a subjective standard, the court assesses the motives of the party and the party's attorney. For example, an argument presented courteously and graciously and with a fervent belief regarding success would not be deemed frivolous. (*Id.* at p. 649, citing *Simon* v. *Bemis Bros. Bag Co.* (1955) 131 Cal.App.2d 378, 382 [280 P.2d 528].) Thus, a court should consider a party's good faith in determining the propriety of awarding sanctions.

An objective standard, by contrast, "looks at the merits of the appeal from a reasonable person's perspective." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 649.) A court should consider whether any reasonable person would conclude that the appeal is "totally and completely without merit." (*Id.* at pp. 649-650, citing *Estate of Walters* (1950) 99 Cal.App.2d 552, 558-559 [222 P.2d 100].) A judgment appealed "despite the fact that no reasonable attorney could have thought [the appeal] meritorious ties up

---

[3]See also California Rules of Court, rule 26(a) which provides, in pertinent part: "Where the appeal is frivolous or taken solely for the purpose of delay or where any party has required in the typewritten or printed record on appeal the inclusion of any matter not reasonably material to the determination of the appeal, or has been guilty of any other unreasonable infraction of the rules governing appeals, the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

judicial resources and diverts attention from the already burdensome volume of work at the appellate courts." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.)

In sum, *Flaherty* concluded that "an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (31 Cal.3d at p. 650.) *Flaherty* also noted that the "two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*Id.* at p. 649.)

A number of cases have applied the standards enunciated in *Flaherty*. (See e.g. *Finnie v. Town of Tiburon, supra,* 199 Cal.App.3d 1; *M.E. Gray Co. v. Gray* (1985) 163 Cal.App.3d 1025 [210 Cal.Rptr. 285]; *Bank of California v. Varakin, supra,* 216 Cal.App.3d 1630; *Bach v. County of Butte* (1989) 215 Cal.App.3d 294 [263 Cal.Rptr. 565]; *Young v. Rosenthal* (1989) 212 Cal.App.3d 96 [260 Cal.Rptr. 369]; *Zimmerman v. Drexel Burnham Lambert Inc.* (1988) 205 Cal.App.3d 153 [252 Cal.Rptr. 115]; *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1985) 176 Cal.App.3d 480 [222 Cal.Rptr. 228].)

In *Finnie v. Town of Tiburon, supra,* 199 Cal.App.3d 1, the trial court denied a request to enjoin a special municipal election and awarded sanctions. Sanctions were awarded because wholly conclusionary allegations were offered to support the injunction; no factual allegations were included in the application for the injunction. The trial court also determined that appellants were guilty of laches, and that the action was frivolous under Code of Civil Procedure section 128.5. Sanctions in the amount of $2,500 were awarded.

On appeal, the judgment was affirmed. Moreover, additional sanctions were imposed. The court concluded that the appeal, like the application for the injunction, was completely without merit. (*Finnie v. Town of Tiburon, supra,* 199 Cal.App.3d at p. 16.) It also determined that sanctions should be based on respondents' costs and attorney's fees since part of the purpose of sanctions was to compensate for needless expenses. (*Id.* at p. 17, citing Eisenberg, *Sanctions on Appeal: A Survey and a Proposal for Computation Guidelines* (1985) 20 U.S.F. L.Rev. 13, 31.) Thus, $14,000 was awarded to respondents.

In addition, the court reasoned that respondents "are not the only parties damaged when an appellant pursues a frivolous claim. Other appellate

parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention. [Citation.] In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources. [Citations.]" (*Finnie* v. *Town of Tiburon, supra,* 199 Cal.App.3d at p. 17.) For this reason, the court ordered appellants' counsel to pay $2,324 to compensate the government for expenses incurred. (*Id.* at p. 17, citing *Bennett* v. *Unger* (1969) 272 Cal.App.2d 202, 211 [77 Cal.Rptr. 326].)

In *M.E. Gray Co.* v. *Gray, supra,* 163 Cal.App.3d 1025, the court upheld the trial court's award of sanctions and imposed additional sanctions for a frivolous appeal. In *Gray,* the defendant successfully moved to continue the trial date. The new trial date was beyond the five-year period. Accordingly, defendant prepared a stipulation regarding a new five-year date and, after some delay, circulated it to the other attorneys in the case. Three weeks passed but no signed stipulation was returned to defendant. By that time, the original five-year date had passed. Believing that the original five-year period was still in force, defendant then moved, unsuccessfully, to dismiss. (*Id.* at pp. 1029-1032.)

In affirming the judgment and awarding sanctions for a frivolous appeal, the court stated, "the [law] firm's decision to pursue an appeal . . . exacerbated an already appalling situation," the conduct of the firm was "reprehensible," and the firm's conduct ignored the interests of the judiciary, bar, and administration of justice. (*M.E. Gray Co.* v. *Gray, supra,* 163 Cal.App.3d at p. 1040, citing *In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 647 and *Kirsch* v. *Duryea* (1978) 21 Cal.3d 303, 309 [146 Cal.Rptr. 218, 578 P.2d 935, 6 A.L.R.4th 334].) The court imposed sanctions in the amount of $8,850. (163 Cal.App.3d at p. 1041.)

In *Bank of California* v. *Varakin, supra,* 216 Cal.App.3d 1630, the trial court's award of sanctions was affirmed and $25,000 in additional sanctions were imposed. Appellant's legal arguments were "absurd" and "the entire history of this prolonged litigation demonstrates that [appellant] has consistently abused every legal process available to him to delay fulfillment of his obligations. These appeals, like those before them in this case, have been utterly futile gestures that have unnecessarily wasted the time and resources of respondents and this court." (*Id.* at p. 1638.)

*Hummel* v. *First National Bank* (1987) 191 Cal.App.3d 489 [236 Cal.Rptr. 449] also involved imposition of sanctions pursuant to Code of Civil Procedure section 907. *Hummell* stressed that appellant's brief merely reiterated issues decided in a prior appeal. In addition, the brief was "grossly

misleading" in that it contained statements contradicted by the record. (191 Cal.App.3d p. 495.) Appellant had further imposed upon the court's time by submitting multiple volumes of clerk's transcript containing irrelevant documents. For these reasons, *Hummell* assessed sanctions totalling $50,000. (*Id.* at p. 496.)

Like the cases discussed above, we conclude that this case warrants the imposition of sanctions. Indeed, we believe these facts present an even more compelling justification for sanctions than several of the cases described. In any event, this case clearly satisfies both *Flaherty* standards. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 649-650.) As we shall explain below, this appeal is frivolous based upon both a subjective and an objective analysis.

With regard to the subjective standard, CPA acted in bad faith, with a vexatious motive, and for purposes of delay. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) The circumstances of this case compel this conclusion. CPA supported its application for a preliminary injunction by proffering two *forged* documents to the court. Besides the obvious impropriety inherent in submitting forged documents to a court, CPA's behavior upon being notified that the documents were forged compounded the situation. For example, at the April 15, 1988, hearing on the application for a temporary restraining order, Katz submitted a declaration maintaining that the "Software License Agreement" was forged. Respondents were prepared to introduce evidence that the documents were not authentic. Despite this notice, CPA did not submit any opposition. In short, it made no effort to contest the contention that the documents were forged. Nonetheless, CPA persisted in its request for relief and at the May 19, 1988 preliminary injunction hearing brazenly argued that the injunction should have been granted.

CPA's bad faith surfaced again when CPA asked the trial court to reconsider its ruling. CPA asked for reconsideration despite the fact that it still did not have any evidence to refute the fact that the documents were forged. Indeed, CPA seemed to concede that the documents were not authentic in its supporting papers by stating, "Although it now appears that DAVID KATZ' signatures on Exhibits 'C' and 'D' to the PALLER Preliminary Injunction Declaration were forged . . . ." Having had its documents exposed as forgeries, one would expect CPA to accept the trial court's ruling and be grateful that additional sanctions had not been imposed. CPA, however, did not act in accordance with such expectations.

Instead, CPA filed its appeal. In its brief, CPA raises three arguments. All attack the trial court's award of sanctions. All argue for reversal, despite the

express findings of the trial court in its statement of decision, and despite the fact that there is nothing in the record to contradict the fact that the documents were forged.

CPA simply does not appear to grasp the magnitude of its conduct in submitting forged documents to the court. An example of CPA's cavalier attitude appears in its opening brief. In the brief CPA refers to " 'false documents.' " By using quotation marks, CPA implies that there is some question about whether or not the documents are actually false. This is misleading and misstates the record. It also wholly overlooks the fact that not once during these proceedings has CPA offered any evidence suggesting that the documents were anything other than forgeries.

Given these circumstances, we agree with the trial court's conclusion that "this matter was prosecuted for the sole purpose of harassing defendants." We also conclude that the *appeal* was filed for purposes of harassment, and also to delay CPA's payment of sanctions imposed by the trial court. In sum, in applying the subjective standard enunciated in *Flaherty*, we conclude that this case is devoid of any indication of good faith on the part of CPA. To the contrary, CPA has demonstrated bad faith at almost every juncture of the proceedings.

With respect to the objective standard, CPA's appeal also satisfies the test enunciated by *Flaherty*. This appeal is "completely and totally without merit," and would be viewed as such by any reasonable person. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) This conclusion is compelled once CPA's arguments on appeal are examined.

CPA raised three arguments on appeal. All attacked the trial court's award of sanctions. As previously noted, sanctions were awarded based upon Civil Code section 3426.4 *and* Code of Civil Procedure section 128.5. Thus, arguable issues about both statutes' inapplicability are required. Although CPA's argument about Civil Code section 3426.4 is clearly without merit, CPA's contentions regarding Code of Civil Procedure section 128.5 are especially galling. The arguments are, quite simply, absurd.

For example, CPA argued, "[w]hile CPA strenuously denies that it intentionally proffered 'false documents' to the court, doing so in and of itself is inadequate to impose sanctions pursuant to CCP § 128.5." This argument is ludicrous. It offends us to reiterate it. Without a doubt submitting forged documents to a trial court is sufficient indication of "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (Code Civ. Proc., § 128.5.)

CPA also argues that the trial court imposed sanctions to "control its processes" and that this is not an adequate ground under Code of Civil Procedure section 128.5. This argument is also totally and completely without merit. The trial court stated that "[t]he use of such tactics by plaintiff was frivolous in that the applications by plaintiff were totally and completely without merit and were prosecuted for the sole purpose of harassing defendants." Thus, the trial court's language expressly tracks the language of Code of Civil Procedure section 128.5. For this reason, CPA's argument is not only incorrect, it is intentionally misleading.

On rehearing, Dawson argued that the trial court's award of sanctions was based upon CPA's negligence, and not upon any bad faith. This argument is also totally and completely without merit. As previously noted, the trial court's statement of decision could not have been clearer. It found that CPA's claims "were made in *bad faith*," that "plaintiffs *knew* that the documents were not authentic," and that the claims "were prosecuted for the sole purpose of *harassing* defendants." (Italics added.) It is impossible to read this language and conclude that the trial court determined that CPA was only negligent.

This type of "abuse of the legal system . . . simply can no longer be tolerated. It is not fair to the opposing litigant who is victimized by such tactics and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it." (*National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 526 [258 Cal.Rptr. 506], fn. omitted.) CPA's conduct is appalling. CPA has not only wasted judicial resources, both at the trial court and appellate level, but, by virtue of its conduct, it has demonstrated disdain toward the courts and judicial system, and in so doing has tainted the judicial process. Clearly, these circumstances warrant the imposition of sanctions.

We award $10,000 in sanctions to Jerome Marks, a professional corporation, for which CPA and Dawson are jointly and severally liable. We award $10,000 to the court, for which Dawson and CPA are jointly and severally liable. Finally, we award $500 in sanctions to Jerome Marks, a professional corporation, for which Wuerfel is liable.[4]

Although respondents have requested additional sanctions to compensate them for the time spent preparing for the rehearing, additional sanctions are

---

[4]Although we appreciate Wuerfel's candor in conceding that the appeal is without merit, we nonetheless feel that he should pay sanctions based upon his belated offer to waive oral argument. Because Wuerfel waited until the last minute to concede, opposing counsel was forced to engage in unnecessary preparation. For this reason, we believe sanctions in the amount of $500 are appropriate.

not warranted. Dawson argued that due process required that he be allowed to argue his position before us. We agreed, and granted the petition for rehearing. Accordingly, in this respect, Dawson's position cannot be characterized as frivolous.

The judgment is affirmed.

Premo, Acting P. J., and Cottle, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 29, 1992.